ANDREW DILLMAN

v.

JOHN W. NADLEHOFFER.

*Filed at Ottawa May 15, 1886.*

1. RESCISSION OF CONTRACT—*placing party in statu quo.* A bill by the purchasers seeking to rescind a contract for the purchase of certain letters patent of the defendant, and all his interest in a prior partnership composed of the two complainants and the defendant, including machinery, tools, and material for the manufacture of barbed wire, and all the debts due and owing the firm, on the ground of fraudulent representations of the vendor as to the value and validity of his patents and what he had been offered for them, is bad, on demurrer, if it does not contain an offer to reconvey the patents, or seek a settlement of the partnership matters, or in any manner to restore the defendant to his former rights. It is not sufficient to allege that the patents are infringements upon others, and worthless, without showing that complainants have ceased to use the patents, or their right to use them has been questioned.

2. SAME—*fraudulent representations—what to be so regarded.* General statements of a vendor, pending negotiations of sale, as to the value or price of the property proposed to be sold, or as to what he had been offered for it, though false, and made with an intent to deceive, and as an inducement to the sale, affords no ground of action, for the reason it is the purchaser's folly to rely on them. This rule is founded on the maxims of *caveat emptor,* and that simple commendation is not binding.

3. Ordinarily, statements of an indefinite or general character, made by either of the parties pending a negotiation for the sale of property, relating to its cost or value, or offers made for it, and the like, will not, in the absence of special circumstances, afford any ground for rescinding the sale, although false, and made with a fraudulent intent. But where the contracting parties, from any cause, are not on equal terms, and such representations are gross exaggerations, resulting in an unconscionable bargain, a court of equity will relieve the injured party.

4. The statement of a vendor of letters patent, that the patents were new, useful, etc., made before the sale, as an inducement to buy, while in form is one of fact, is necessarily based, to a large extent, upon mere opinion; and when the vendee is as capable of judging as to the fact as the vendor, the falsity of such representation will afford no ground for avoiding the sale.

5. Ordinarily, one is not liable for false representations respecting a mere question of law. So a statement by the holder of letters patent, that they

are legal and valid letters, if untrue, is not cause for avoiding a sale of the letters, made in reliance on such statement.

6. Same—*whether a purchaser may rely on representations of vendor.* If there are facts and circumstances present at the time representations are made by a vendor to induce the purchase, sufficient to put the purchaser upon his guard, or to cast suspicion on their truthfulness, and he neglects to investigate, he will not be relieved from his contract entered into without the care he should have exercised. So if the vendor represents to the buyer that he has an offer of a much greater price than he asks, the purchaser will have no right to rely on such representation, in the absence of some other artifice to prevent investigation.

7. Same—*the particular case.* A, B and C formed a partnership for the manufacture and sale of barbed wire, A furnishing as his share of the capital the use of three certain improvements in barbed wire, of which he claimed to be the owner and inventor, and for one of which he had received a patent, and B and C the remaining capital. The business was sucessfully carried on for about a year, when A, having received a second patent, refused to carry on the business any longer, and threatened to sell his patents. A then sold his patents, and all his interest in the partnership effects, for $23,000, to B and C, who continued the business for nearly two years, when they filed a bill to rescind the sale, on the ground of false and fraudulent representations on the part of A. The statements of A relied upon as fraudulent, were, that the letters patent were valid, and the invention therein described and claimed was new and useful, and had not been in use before, and that he had been offered upward of $25,000 in cash for said two letters patent: *Held,* that in the light of the circumstances shown in the bill, the representations were not of such a character as to justify a rescission of the contract.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Will county; the Hon. Josiah McRoberts, Judge, presiding.

Messrs. House & Fry, and Mr. James E. Babb, for the appellant:

False representations of a vendor as to the cost of the property, or its rental, will justify a rescission of the contract of sale, or render the party making it, liable. *Ekins* v. *Tresham,* 1 Lev. 102; *Bagshaw* v. *Seymour,* 4 C. B. (N. S.) 873; *Clark* v. *Dickson,* 6 id. 453; *Bedford* v. *Bagshaw,* 4 H. & N. 538; *Sanford* v. *Handy,* 23 Wend. 268; *Page* v. *Parker,* 43 N. H. 369; *Hazard* v. *Irwin,* 18 Pick. 105; *Brown*

v. *Castles*, 11 Cush. 348; *Medbury* v. *Watson*, 6 Metc. 246; Leake on Contracts, 355; *Van Epps* v. *Harrison*, 5 Hill, 67; *McFadden* v. *Robinson*, 35 Ind. 34; *McAleer* v. *Horsey*, 35 Md. 439; *Somers* v. *Richards*, 46 Vt. 170.

In an action for a willful or intended tort, the defendant can not reply the negligence of the plaintiff. *Sanford* v. *Railroad Co.* 23 N. Y. 346; Beach on Contributory Negligence, sec. 17; *Railroad Co.* v. *Lee*, 68 Ill. 580; *Railroad Co.* v. *Donahue*, 75 id. 108; *Coal Co.* v. *Taylor*, 81 id. 595; *Railroad Co.* v. *Godfrey*, 71 id. 508.

The demurrer admits the allegation of the worthlessness of the patents, and being worthless, no offer to restore or re-assign them was necessary before filing the bill. *National Bank* v. *Peck*, 8 Kan. 660; *Harlow* v. *Putnam*, 124 Mass. 555; *Jenkins* v. *Abbotts*, 54 N. H. 447; *Sexton* v. *Dodge*, 47 Barb. 84; *Bliss* v. *Negus*, 8 Mass. 46; *Cross* v. *Huntley*, 13 Wend. 386; *Babcock* v. *Case*, 61 Pa. St. 427.

That a patent is void for want of novelty, see *Hotchkiss* v. *Greenwood*, 11 How. 248; *Hicks* v. *Kelsey*, 18 Wall. 670; *Heild* v. *Rice*, 104 U. S. 755; *Smith* v. *Nichols*, 21 Wall. 112; *Atlantic Works* v. *Brady*, 107 U. S. 192; *Terhune* v. *Phillips*, 99 id. 592.

The grant of an interest in or a right under a void patent is not a valid consideration for a promise by the grantee. *Harlow* v. *Putnam*, 124 Mass. 555; *Fallis* v. *Griffith*, Wright, (Ohio,) 303; *Parrott* v. *Farnsworth*, Brayt. (Vt.) 174; *Cragin* v. *Fowler*, 34 Vt. 326; *Clough* v. *Patrick*, 37 id. 421.

Mr. G. D. A. PARKS, and Mr. THOMAS H. HUTCHINS, for the appellee:

The bill does not specify the infringements of the patents complained of. When the facts are within the knowledge of the pleader, and not so numerous or complicated as to require a general and compendious form of statement, he must, in cases where he seeks to aver fraud or failure of considera-

tion, distinctly specify the material facts constituting his cause of action. *Smith* v. *Brittenham*, 98 Ill. 189; *Sims* v. *Klein*, Breese, 303; *Primmer* v. *Patton*, 32 Ill. 528; *Newall* v. *Bureau County*, 37 id. 253; *Black* v. *McLogan*, 15 id. 249; *Parks* v. *Holmes*, 22 id. 524; *Cole* v. *Joliet Opera House*, 79 id. 97.

The alleged false statement of the appellee, that he had been offered $25,000 for his patents, does not belong to that description of false representations which are supposed by the courts to have effect upon the mind of the vendee of ordinary prudence. When coming from a third person acting in collusion with the vendor, the rule is different. *Noetling* v. *Wright*, 72 Ill. 390; *Mervin* v. *Arbuckle*, 81 id. 501; *Schramm* v. *O'Conner*, 98 id. 539; *Kenner* v. *Harding*, 85 id. 275; Kerr on Fraud and Mistake, 84.

As to the general doctrine of representation operating to avoid sales, reference is made to *Walker* v. *Carrington*, 74 Ill. 446; *Allen* v. *Hart*, 72 id. 104; *Fauntleroy* v. *Wilcox*, 80 id. 477; *Eames* v. *Morgan*, 37 id. 260; *Miller* v. *Craig*, 36 id. 109; *Banta* v. *Palmer*, 47 id. 99.

Where a recital or stipulation in a written agreement is plain, and no mistake is alleged, it can not be contradicted, and virtually annulled by parol. *Emery* v. *Mohler*, 69 Ill. 221; *Insurance Co.* v. *Morrison*, 62 id. 243; *Gibbons* v. *Bressler*, 61 id. 112; *Hollida* v. *Hunt*, 70 id. 114; *Weaver* v. *Fries*, 85 id. 361.

The representations alleged were inadmissible in evidence, as being directly repugnant to the tenor of the written contract. *Robinson* v. *Majority*, 28 Ill. 427; *Packard* v. *Van-Cehaick*, 58 id. 81; *Strahl* v. *D'Even*, 66 id. 79.

A false affirmation by a vendor, of the legal validity of his title, does not come within the scope of the doctrine of false representations avoiding sales. Where the affirmations of the vendor relate to the value, prospects or title of the thing sold, in the absence of special circumstances of fraud, the

rule of *caveat emptor* applies. *Cox* v. *Montgomery*, 36 Ill. 396; *Rogers* v. *Higgins*, 57 id. 244; *Allen* v. *Hart*, 72 id. 104.

The *scienter* is essential to constitute fraud in representations. *Holdom* v. *Ayer*, 110 Ill. 448; *Tone* v. *Wilson*, 81 id. 534.

The bill is fatally defective in not offering to restore to the vendor, as a condition of rescinding the sale. *Edmunds* v. *Meyers*, 16 Ill. 207; *Dowden* v. *Wilson*, 108 id. 258; *Smith* v. *Brittenham*, 98 id. 188; *Graff* v. *Simmons*, 58 id. 443; *Smith* v. *Doty*, 24 id. 165; *Linton* v. *Potter*, 31 id. 107; *Vining* v. *Leeman*, 45 id. 249; *Buchanan* v. *Horney*, 12 id. 338; *Edmunds* v. *Hildreth*, 16 id. 214; *Jennings* v. *Gage*, 13 id. 610; *Insurance Co.* v. *Botto*, 47 id. 516; *Underwood* v. *West*, 52 id. 397.

These patents might be of some value to appellee, and for that reason should be restored or offered to be restored. *Taylor* v. *Hare*, 4 Bos. & Pull. 201; *Barrett* v. *Stanton*, 2 Ala. 180; *Chance* v. *Commissioners*, 5 Blatchf. 441; *Conner* v. *Henderson*, 15 Mass. 319.

The assignment of an invalid patent is a sufficient consideration for a promissory note, where there is no warranty. *Oakley* v. *Boorman*, 21 Wend. 588; *Johnson* v. *Situs*, 1 Hill, 606; *Gilmore* v. *Akin*, 118 Mass. 94; Walker on Patents, sec. 283.

Mr. C. A. HILL, also for the appellee.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This is an appeal from a judgment of the Appellate Court for the Second District, affirming an order and decree of the circuit court of Will county, sustaining a demurrer to and dismissing the complainant's bill for want of equity, in a certain suit therein pending, wherein Andrew Dillman and Edward R. Knowlton were plaintiffs, and John W. Nadlehoffer

was defendant. The bill charges, in substance, that in the fall of 1882 the plaintiffs and defendant entered into co-partnership, under the firm name of John W. Nadlehoffer & Co., for the purpose of carrying on the business of manufacturing and selling barbed fence wire at Joliet, in said county; that defendant contributed, as his share of the capital in said business, the use of three certain improvements in barbed wire, of which he claimed to be the owner and inventor, and which constituted the chief inducement to the formation of the partnership; that defendant had already received a patent for one of said improvements, and had applications pending for the other two; that the partnership business thus established was successfully carried on, with defendant as superintendent of the factory, until the 18th of April, 1883, when defendant refused to carry on the business any longer, and was threatening to sell his patents, he having in the meantime obtained another on said improvements; that he represented to and assured plaintiffs that he was already offered by others $25,000 for the two patents, and that he should accept the offer if plaintiffs declined to purchase them; that under these circumstances, on the 18th day of April, 1883, defendant, by a written contract, signed and sealed by all the parties, for the consideration of $23,000, sold and transferred to the plaintiffs all his interest in the partnership, its business and effects, including machinery, tools, fixtures, goods, manufactured and not manufactured stock on hand, and all debts and claims due the firm; that before and at the time of the sale and transfer to plaintiffs, by defendant, of his interest in the partnership, its business and effects, as just stated, as well as before and at the time of the commencement of the partnership itself, the defendant represented to plaintiffs that said improvements were his own invention, and that the patents issued thereon were genuine and valid, and that they did not conflict with or infringe upon the patents or inventions of any one, and particularly those controlled by the Washburn &

Moen Manufacturing Company and J. L. Ellwood, or their licensees.

The truth of all these representations and statements is positively denied, and it is expressly charged in the bill, they were made with intent to deceive and defraud plaintiffs, and that, confiding in their truth, they were induced to act upon them, to their injury. The object of the bill is to restrain the collection of a balance due defendant on the sale of the patents and his interest in the partnership effects, and to recover back the amount received by him from plaintiffs under said sale and transfer.

While the bill seeks to set aside and rescind the contract of sale of the 18th of April, 1883, which operated not only as a transfer, to plaintiffs, of the patents, but also as a dissolution of the partnership, and as a conveyance to them of defendant's entire interest in the partnership, as already seen; yet it does not offer to reconvey the patents, nor does it seek an accounting or settlement of the partnership business, or in any manner to restore him to his rights as they existed before and at the time of the dissolution of the partnership, nor is it claimed by the bill that the complainants have ceased to use the patents in conducting their business, or that their right to do so has ever been questioned by any one, although a year and nine months and a half elapsed between the date of the transfer and the filing of the bill. As the complainants do not offer to reconvey the patents, it may be, for aught that appears from the bill, they have sold, in whole or in part, their rights in them to others, and possibly realized therefrom large profits.

We do not think, in the light of all the facts disclosed by the bill, the simple averment that the patents were infringements upon other patents, and worthless, is a sufficient answer to the defects in the bill here pointed out. But as we do not intend to rest our decision upon the insufficiency of the bill in this respect, it is unnecessary to enter upon a dis-

cussion of this phase of the case. We prefer that the conclusion to be reached shall turn upon the main question discussed by counsel in the briefs, namely, whether the representations relied on, in the light of all the circumstances appearing on the face of the bill, are such a fraud as constitutes an actionable injury, cognizable in a court of equity.

The particular statements imputed to the defendant, and mainly relied on as a ground of relief, are but two, and, as expressed in the bill, are as follows : First, "that said letters patent were valid, and the invention therein described and claimed was new, useful, and had not been in use before," etc. ; and second, that defendant "had then already been offered upwards of $25,000 in cash for said two letters patent."

Much of the argument seems to proceed upon the theory that a false representation, made in a given form for a fraudulent purpose, must necessarily be followed by the same legal consequences under all circumstances. Acting upon this idea, appellee collates and presses upon the attention of the court a certain line of authorities recognizing the rule that general statements of a vendor, pending a negotiation of sale, as to the value or price of the property, or as to what he has been offered for it, though false, and made with an intent to deceive, and as an inducement to the sale, will afford no ground of action, for the reason it is the purchaser's own folly to rely on such statements. This general rule is founded mainly on two maxims of the law, namely, *caveat emptor*, and *simplex commendatio non obligat*. On the other hand, appellant has collected, and presented in a very able and elaborate argument, another line of authorities, where like representations with respect to value or price, made under different circumstances, have been held to vitiate the sale, and entitle the injured party to relief. The latter class of cases establish and illustrate the exceptions and limitations to the general rule announced in the first.

Ordinarily, statements of an indefinite or general character, made by either of the parties pending a negotiation for the sale of property, relating to its cost or value, or offers made for it, and the like, will not, in the absence of special circumstances, afford any ground for avoiding the sale, although false, and made with a fraudulent intent. *Cooper* v. *Lovering*, 106 Mass. 77; *Mooney* v. *Miller*, id. 102; *Hemmer* v. *Cooper*, 8 Allen, 334; *Halbrook* v. *Conner*, 60 Me. 578; *Jennings* v. *Broughton*, 5 DeG., M. & G. 134; *Drysdale* v. *Mace*, id. 107; *Ellis* v. *Andrews et al.* 56 N. Y. 83; *Noetling* v. *Wright*, 72 Ill. 390; *Walker* v. *Carrington*, 74 id. 446; *Allen* v. *Hart*, 72 id. 104; *Clement* v. *Boone*, 5 Bradw. 109; *Fauntleroy* v. *Wilcox*, 80 Ill. 477; *Eames* v. *Morgan*, 37 id. 260; *Miller* v. *Craig*, 36 id. 109; *Banta* v. *Palmer*, 47 id. 99; *Kenner* v. *Harding*, 85 id. 264; *Bond* v. *Ramsay*, 89 id. 29; *Tuck* v. *Downing*, 76 id. 71. Yet it is just as well settled, that where the contracting parties, for any cause, are not on equal terms, and such representations are gross exaggerations, resulting in an unconscionable bargain, equity will not hesitate to interpose in favor of the injured party. *Jackson* v. *Armstrong*, 50 Mich. 65; *Haggarth* v. *Wearing*, L. R. (12 Eq.) 320.

The case last cited well illustrates the subject under discussion. Miss Haggarth inherited from her brother, James Haggarth, an estate worth about £500. The first intimation she had of the fact was from the defendant, Wearing, who was quite familiar with the estate and its value, while the plaintiff knew nothing whatever about it. Wearing called on her at her own house, and after having informed her of her succession to the estate, he asked what she was going to do with it. She replied, "she did not know." He then told her there was an understanding between himself and her brother, to the effect that the latter was to make over the land to him, but that he had neglected to do so. She then asked him what the land was worth, to which he replied, "£100,—may be a trifle more or less." Believing what he said to be true, and having no other

knowledge or information on the subject, she told him she would let him have the property for the £100, and some time afterwards conveyed it to him,—or, rather, to his daughter, at his request,—for the £100. On learning the true value of the land, Miss Haggarth filed a bill against Wearing and his daughter to set aside the sale and conveyance, and the court decreed accordingly, holding the representation was fraudulent, notwithstanding it related to the value of the premises, and this decree was affirmed on appeal. We have no doubt of the correctness of the decision in that case. Several important matters entered into the question involved in it, which are worthy of special notice, as they are frequently to be met with in that class of cases. First, the parties were not contracting on equal terms,—that is, the purchaser knew all about the property, and the seller knew nothing about it; second, the vendor's ignorance on the subject was well known to the purchaser; third, the statement as to the value of the land was made by him in response to a direct question asked him by her on that subject, and he was therefore bound to answer truly, if at all; fourth, the value, as fixed by him, was grossly inadequate.

It will be seen at a glance that the features we have specially noted as having a controlling influence in that case, do not appear at all in this, and hence it can not be regarded as an authority against the view taken by the lower courts in this case. The statement in the present bill, that the patents were new, useful, etc., while in form is one of fact, was necessarily based, to a large extent, upon mere opinion, about which, so far as we can perceive, the appellant was just as able to judge as the appellee. When this representation was renewed, at the time of the sale, the appellant had been manufacturing under the patents near a year, and it is but reasonable to presume that he had learned pretty much all that could be known about them, so far as their usefulness was concerned; and with respect to their legality or validity, that necessarily

involved a mere legal opinion, about which one non-professional person could judge as well as another. It is well settled, that ordinarily one is not liable for false representations respecting a mere question of law. (*Fish* v. *Cleland*, 33 Ill. 238.) There are some exceptions to this rule, it is true, but this case does not fall within them.

There is another important matter to be specially noted in this connection. In all cases where it is sought to hold one liable for false representations, the question necessarily arises, whether, under all the circumstances, the plaintiff had a right to rely upon them. In determining this question, the representations must be viewed in the light of all the facts of which the plaintiff had actual notice, and also of such as he might have availed himself by the exercise of ordinary prudence. If, therefore, in thus considering the representations, it appears there were facts and circumstances present at the time they were made, sufficient to put the plaintiff upon his guard, or to cast a suspicion upon their truthfulness, and that he neglected to avail himself of the warning thus given, he would not afterwards be heard to complain, for the reason his own conduct contributed to the injury.

The written contract which is here sought to be set aside contains, among others, the following provision: "The said party of the first part, however, does not warrant the validity of either of said patents, or that they are not infringements of any other patents now existing, and the said party of the first part shall not be required to defend any suits now pending, or hereafter to be instituted, wherein the validity of said patents is called in question." Here the appellee expressly refused to warrant the validity of the patents, or that they were not infringements upon other patents, showing conclusively, whatever he may have theretofore said to the contrary, that he did not then positively *know* that the patents were valid, or that they were not infringements upon other patents, and that he was not willing to take any risk on either of these

37—119 ILL.

questions. Surely, this was enough to put appellant upon his guard. It shows conclusively that the contingency of the patents ultimately proving to be invalid in law, was in the minds of both the contracting parties, and this was expressly provided for in the agreement. In such case the seller can not be held liable for a false representation, where nothing appears to show, as is the case here, that the seller has been guilty of any artifice, or other means to prevent the purchaser from examining and judging for himself.

. We are also clearly of opinion, that under the circumstances of this case the appellant was not warranted in relying on the statement that appellee had already been offered $25,000 for the patents. Conceding that such a representation, under some circumstances, might be a ground for equitable relief, there are a number of reasons why it can not be so regarded in this case. In the first place, the statement is too general and vague. There is nothing in it to indicate when, where, or by whom it was made, or whether it was by a responsible or irresponsible person. Moreover, the very fact that appellee consented to accept of appellant $23,000, when another, according to the representation, as is claimed, was standing by ready to pay him $25,000, ought to have satisfied any reasonable person that the representation could not be safely relied upon. But the case was still worse than this. The $23,000 was not given and promised together for the patents alone, but also for appellee's interest in the partnership and the entire partnership effects. Under these circumstances, if the appellant placed any reliance upon the representation in question, as he claims he did, it was the sheerest folly to do so, and he has no right to complain.

· We agree with the lower courts that the bill shows no ground for relief, and that it was therefore properly dismissed.

The judgment will be affirmed.

*Judgment affirmed.*