## SAMUEL B. POOL AND PRISCILLA TUCKER
### V.
### ROBERT TUCKER.

*Replevin—Divorce—Property Surrendered in Lieu of Alimony—Estoppel—Evidence—Instructions.*

1.  No one can keep the benefits of a contract and at the same time repudiate its obligations and burdens.

2.  A decree of divorce rendered against the husband in a suit in which he was served with process but did not appear, which recites that property

theretofore given plaintiff by him, was in lieu of alimony, estops defendant from afterward claiming the property.

3. Such decree is competent evidence in a subsequent suit by the husband to recover the property mentioned in it.

4. The testimony of the wife is admissible to identify the property.

[Opinion filed May 28, 1890.]

APPEAL from the Circuit Court of Lee County; the Hon. JOHN D. CRABTREE, Judge, presiding.

Messrs. DIXON & BETHEA, for appellants.

Messrs. MORRISON & WOOSTER, for appellee.

C. B. SMITH, J. This was a replevin suit brought by appellee against appellants, to recover the possession of one mare, one cow, one heifer and two shoats, all of the value of $65.

Priscilla Tucker was the wife of Robert Tucker. Before their marriage Priscilla had worked for Robert as his housekeeper, and in the fields for about six months, for which she had never been paid. Some time after they had been married Priscilla left her husband charging him with cruelty and other bad conduct; Robert, fearing his wife would bring a suit for a divorce and claim alimony and insist on payment for her services, determined, as he says, to put his property out of her reach, and with that purpose in view he went to Amboy and sought the advice of a justice of the peace. While he was in the justice's office, he met Samuel B. Pool, an attorney, and Pool advised him to make a note and mortgage to his son for $750, and then assured appellee that it could not be broken, with some adjectives not here necessary to repeat. This note and chattel mortgage was given, conveying all the chattel property Robert Tucker then had to Tucker's son. The proof shows that Tucker did not owe his son to exceed $100, if indeed he owed him anything. The note and mortgage was plainly fraudulent, and as Tucker himself admits, was for a fraudulent purpose; and that appellant Pool advised and assisted him in the fraudulent scheme and

Pool v. Tucker.

for the avowed purpose of preventing his wife from getting anything out of his property. Pool does not deny this charge, although he was on the witness stand.

After this note and mortgage were executed, Priscilla Tucker, not knowing that Pool had been assisting her husband in a fraudulent scheme to cover up his property, went to him (Pool) for advice and assistance, to compel her husband to pay her for her labor. Pool advised her to commence an attachment suit against her husband on the ground (as we are authorized to infer) that Tucker had fraudulently been disposing of his property. There were no other grounds for an attachment. The attachment writ was sued out and placed in the hands of Jewett, a constable. Instead of sending the officer in the usual way to serve this writ, Pool went with him and directed the officer to say nothing about the writ, and not serve it unless he authorized him to do so. Pool and the officer called on Robert Tucker and Pool informed Tucker that his wife had come to town and wanted some of his property, and that he had come after it. Tucker expressed great surprise that the mortgage scheme so lately entered into under such flattering assurances from Pool as to its availability against all assaults, should have so suddenly lost all its power. Tucker finally consented to let Pool have the property in controversy in full settlement of all claims of his wife for her labor or for separate maintenance or alimony in any divorce proceedings which might thereafter be had against him. Some of the property was taken away, and the balance delivered the next day. On the next day Pool gave Tucker a receipt and a release from all claims for his wife for labor or alimony or separate maintenance. Tucker, on the afternoon of this settlement, and on the next day, told at least three persons that he had had a final settlement with his wife and was glad of it, and had done better than he expected to do. Shortly after this transaction and after he had repeatedly expressed his satisfaction with it he appears to have changed his mind and brought this suit. His only claim on the trial was that he gave up the property under duress and threats from Pool and Jewett, who threatened to take all the

property he had if he refused to give them what they demanded and he also insists that he was misled by the advice and direction of Pool, who, he then supposed, was acting as his attorney and advising him in his own interest and telling him that his wife must have some of the property anyhow, notwithstanding the mortgage, and that, being alarmed from the threats made that they would take all his property, and being misled with the advice of Pool that his wife must have some of his property, he did consent to give it up. Tucker admits in his cross-examination that he knew that afternoon before Pool left that he was there in the interest of his wife.

This admission is fatal to all his claim based on the supposition that Pool was his attorney. The proof also shows that the duress he now relies upon was an afterthought. Three witnesses testify that shortly after the property was taken and before all of it was taken away, he expressed himself well satisfied with the adjustment, and seemed pleased that he was done with it.

The proof also shows that the division of the property between himself and wife was fair and reasonable upon the question of alimony alone, without any reference to wages claimed by the wife. He fared quite as well, and probably better, than if the court had made the decision on a hearing of the divorce case.

Proceedings for divorce were afterward begun by Priscilla against him, and he was served with process and made default, and a decree passed against him awarding her a divorce, and in that decree it was recited that no alimony was allowed, because the parties had settled that question between themselves and satisfactorily to them, and the property of the defendant was released from all claim of dower, etc. This decree was an express adoption and ratification of the settlement by the court, and both parties being in court, were bound by it. The court, by its service on the defendant, had jurisdiction of him and his property and might divide it as justice required, between plaintiff and defendant, and when the court ratified and adopted their own division of the property or omitted to make division because they had

Pool v. Tucker.

divided it, whether made between them willingly or unwillingly, then they were both bound by that division and by that decree.

Again, Robert Tucker went voluntarily the next day to Amboy and called on Pool, and instead of repudiating the alleged fraud and imposition upon him, and then demanding his property, he ratified it by taking a receipt and a release from Pool releasing him from all claims of his wife against him. This was a valuable and sufficient consideration for the release, and he could not hold this release and repudiate his acts in delivering up the property at the same time. No man will be permitted to keep the benefits of a contract, and at the same time repudiate its obligations or burdens imposed upon him. Farwell v. Hanchett, 9 N. E. Rep. 58; Harzfeld v. Converse, 105 Ill. 534; Dillman v. Nadlehoffer, 119 Ill. 567.

While the methods and conduct of Samuel B. Pool, as disclosed by the uncontradicted testimony, show him in an unenviable light, in engineering a fraudulent scheme for the pitiful sum of five dollars, and then using that very fraud as the foundation for suing out an attachment for another client, yet that disreputable, dishonest and most unprofessional conduct of Pool does not help Robert Tucker in his equally rascally and dishonest purpose to beat his wife out of the small pittance she gets out of the little property allotted to her between Tucker and Pool, especially when Pool took the heifer and shoats for his share.

The verdict is clearly against the evidence and should have been set aside.

It was also error to reject the decree in the divorce case, showing, as it did, a settlement between the parties of the matter in dispute in this case. That settlement was conclusive upon both parties to it; and while Pool was not a party to the divorce suit, yet all the title he pretended to have or could have under the evidence was through Priscilla Tucker. There is no pretense that Robert Tucker gave Pool any of the property for himself, but for his wife Priscilla, and Pool also claims he got it for her, and after getting it for her, and holding the title for her, he keeps the heifer and shoats for himself.

It was also error to strike out the testimony of Priscilla Tucker stating that she had taken the property in settlement, which was referred to in the decree. It was proper to identify the property described in the decree as the property she received from her husband in settlement for her alimony.

The first instruction is erroneous; it places the whole case upon the supposed fraudulent conduct of Pool and leaves out of view the fact admitted by Tucker, that he knew Pool was then acting for his wife, and it leaves out of view the fact that Tucker could not hold a full release from his wife in consideration of this property being given her, and at the same time reclaim the property, without giving back the release; and it also ignores the fact of the conclusive effect of the decree against Robert Tucker. It is true this decree was not in evidence, but it ought to have been, and the jury ought to have been told of its effect. The decree was before the court although not before the jury.

The second instruction is open to the same objection. It simply tells the jury that if Pool obtained the property from Tucker by fraud, then the plaintiff might retake it while in Pool's hands. While as a mere naked proposition of law fraud vitiates all contracts, and will justify a rescission by the injured party, it will not authorize a rescission and permit the injured party to keep the advantages of the transaction, if any, and yet that was plainly the legal effect of the second instruction.

We are reminded that this is the second trial of this cause, and that two juries have found the same way. The record of the first trial is not before us, but it will be time enough to urge upon us the finding of the jury, when the case has been properly and legally tried upon proper evidence and upon proper instructions.

Other objections are urged to the giving, refusing and modifying instructions, but they are not substantially different in principle from those we have considered, and it is not necessary to notice them further. The judgment is reversed and cause remanded.

*Reversed and remanded.*