Mayberry v. Rogers.

---

## L. C. Mayberry v. George D. Rogers.

1. VENDORS—*Right to Extol His Property.*—Where parties to a sale stand upon equal terms the vendor has a right to extol the value of his own property to the highest point his antagonist's credibility may bear. Ordinarily statements of an indefinite or general character made by either of the parties, pending a negotiation for the sale of property, relating to its cost or value, or offers made for it and the like, will not, in the absence of special circumstances, afford ground for avoiding the sale, although false and made with a fraudulent intent.

2. SAME—*Where the Rule Does Not Apply.*—Where contracting parties for any cause are not on equal terms, and such representations are gross exaggerations, resulting in an unconscionable bargain, the above rule will not apply.

3. VENDOR AND VENDEE—*Where Not on an Equal Footing.*—Where the vendor and vendee are not contracting on an equal footing, and the latter is induced to purchase because of false statements of the former, the rule of *caveat emptor* has no application.

Assumpsit, on a promissory note. Trial in the Circuit Court of Winnebago County; the Hon. CHARLES H. DONNELLY, Judge, presiding. Verdict and judgment for defendant; appeal by plaintiff. Heard in this court at the December term, 1898. Affirmed. Opinion filed April 11, 1899.

**Statement of the Case.**—This was a suit in assumpsit brought by appellant against appellee, upon a promissory note given by the latter to the former for the sum of $950, as the balance of the purchase price of six shares of stock in the Rockford Milk and Butter Co. The note was dated August 7, 1897, due October 1, 1897, and $600 had been paid upon it prior to the bringing of suit. Appellee pleaded the general issue and a special plea setting forth a failure of the consideration of the note. The general issue was afterward withdrawn and the case tried upon the issues presented by the special plea. The Rockford Milk and Butter Co. was incorporated March 4, 1897, for the purpose of conducting a creamery and handling "pastuerized" milk, at the city of Rockford, Illinois. Appellant was one of the incorporators of the company; held stock to the amount of $600 and was a director, secretary and treasurer. It was part of his duty to superintend the keeping of the books and look after the financial management of the company.

Appellee, who was at the time a resident of Austin, Illinois, where he had been engaged in dealing in milk, came to Rockford in the latter part of July, 1897, called at the office of said company and made inquiries of appellant, concerning the handling of milk. Appellant explained the business to him and in the course of the conversation suggested that he would sell his interest in the business. Negotiations were not concluded at that time, but other meetings were had, and on the 7th day of August, 1897, a sale of appellant's stock, amounting to six shares of the par value of $600, was made to appellee for the sum of $1,000.

Appellant afterward went to Austin and obtained the signature of appellee to the note and agreement in evidence.

Appellee testified that in his conversation with appellant the latter told him it was a big business and going on nicely; that the other stockholders would not sell their stock; that it was the biggest paying business in Rockford; that it was growing so large they could not take care of it; that if he, Mayberry, were a younger man, he would not sell, because they had all they could do and were making a big thing;

that the company was not owing a dollar; that there was not a dollar's worth bought, they did not have cash to pay for; that they were taking in between ten and twelve dollars per day from the wagon for milk sold; that the balance in the bank of over $900, as shown by the bank book, was a balance after everything was paid, and that there was a good dividend which would go with the stock.

Appellee further testified that these statements were wholly untrue; that the company was taking in only about $5.80 a day from the wagon instead of ten to twelve dollars; that the business was decreasing instead of growing and earning no profit at all; that there was no dividend in the bank and instead of having no debts the company was in debt to the extent of $700 over and above all moneys on hand. The defendant denied a greater portion of these statements, but avers that he simply extolled the value of his own property as he had a right to do. He specially denies that he made the statement that the company did not owe a dollar and had at the time a profit in the bank, but admits that the bank book handed appellee for inspection, showed the amount of $934.35 to the credit of the company in the bank. He says the question of dividends was not mentioned, but the written agreement signed by the parties contained a special provision that all dividends accruing on all stock after the date of the same, should be paid to appellee. The jury returned a verdict in favor of appellee and a judgment was entered for him from which an appeal has been taken to this court.

FROST & McEVOY, attorneys for appellant.

General representations made by a vendor as to the value of property he offers for sale, or as to the price he has been offered for it, will not, except in extreme cases, be regarded as evidence of a fraudulent intent. Welling v. Schiller, 27 Ill. App. 284–286; Manning v. Albee, 11 Allen (Mass.), 520–522; Curry v. Kayser, 30 Ind. 214; Ellis v. Andrews, 56 N. Y. 83; Dimmock v. Hallett, L. R., 2 Ch. App. 26.

A purchaser can not maintain an action against his vendor

for false statements in regard to the value of the property purchased, or its good qualities, or the price he has offered for it. Noetling v. Wright, 72 Ill. 390.

One who relies on such affirmations made by a person whose interest might so readily prompt him to invest the property with exaggerated value, does so at his peril, and must take the consequences of his own imprudence. Kerr on Fraud and Mistake, 84; Van Horn v. Keenan, 28 Ill. 448.

A vendor has the right to extol the value of his own property to the highest point his antagonist's credulity may bear. This is the daily practice, and no one has ever supposed that such boastful assertions or highly exaggerated description amounted to fraudulent misrepresentation or deceit. Miller v. Craig, 36 Ill. 111; Vernon v. Keyes, 12 East, 632; Medbury v. Watson, 6 Metc. (Mass.) 259; Tuck v. Downing, 76 Ill. 71, 95, 97.

Where the purchaser undertakes to make investigations as fully as he chooses, which the vendor does not prevent or hinder, the purchaser can not afterward allege that the vendor made misrepresentations. Atwood v. Small, 6 Clark & F. 232; Jennings-v. Broughton, 5 DeG. M. & G. 126; Tuck v. Downing, 76 Ill. 71; Herron v. Herron, 71 Iowa, 428.

R. K. WELSH, attorney for appellee.

Although ordinarily false statements as to the value of a piece of property offered for sale do not afford grounds for avoiding a sale, yet it is equally well settled that where, for any reason, the contracting parties are not upon an equal footing as to facilities for knowing or ascertaining the truth or falsity of such statements, or where, being on equal terms, the seller prevents the buyer in any way from learning the truth and exercising his own judgment, such false statements, even of value or opinion, become actionable, and are clearly so when coupled, as in this case, with misrepresentations of material facts affecting the value of the property being sold, and under such circumstances the purchaser has the right to rely upon the statements of the seller, and if he

buys upon the assumption that these statements are true, he may avoid the sale or recoup in an action against him for the purchase price. This is true even though the purchaser makes some examination for himself. Bavarian Brewing Co. v. Farrar, 163 Ill. 471; Murray v. Tolman, 162 Ill. 417; Hicks v. Stevens, 121 Ill. 194; Dillman v. Nadlehoffer, 119 Ill. 575; Booth v. Smith, 117 Ill. 370; Allin v. Millison, 72 Ill. 201; Cox v. Gerkin, 38 Ill. App. 342; Cruess v. Fessler, 39 Cal. 336; Bank of Woodland v. Hiatt, 58 Cal. 234; Harris v. McMurray, 23 Ind. 9; Huffstetter v. Bazett, 32 Ind. 293; Arbuckle v. Biederman, 94 Ind. 173; Nysewander v. Lowman, 124 Ind. 584; Bloomer v. Gray, 37 N. E. Rep. 820; Ward v. Trimble, 44 S. W. Rep. (Ky.) 450; Starkweather v. Benjamin, 32 Mich 305; Jackson v. Armstrong, 50 Mich. 65. French v. Ryan, 104 Mich. 625; Buschman v. Cook, 52 Md. 208; Union Nat'l Bank v. Hunt, 76 Mo. 439; Wannell v. Ken, 57 Mo. 478; Cahn v. Reid, 18 Mo. App. 115; Morgen v. Dinges, 23 Neb. 273; Olcott v. Bolton, 50 Neb. 779; Mead v. Bunn, 32 N. Y. 275; Simar v. Canaday, 53 N. Y. 306; Morgan v. Skiddy, 62 N. Y. 319; Miller v. Barber, 66 N. Y. 567, Schwenk v. Naylor, 102 N. Y. 683; Bigler v. Flickinger, 55 Pa. 283; Bower v. Fenn. St. 90 Pa. St. 359; Grim v. Byrd, 32 Grat. (Va.) 293; Rorer Iron Co. v. Trout, 83 Va. 397; McClellan v. Scott, 24 Wis. 85; Porter v. Beattie, 88 Wis. 22; Beetle v. Anderson, (Wis.), 73 N. W. Rep. 560; Bishop on Contracts, Sec. 651.

The standard or rule by which to determine whether the false statement is material or not is this : " If the fraud be such that had it not been practiced, the contract would not have been made or the transaction completed, then it is material to it." 2 Parsons on Contracts, 267; Smith v. Countryman, 30 N. Y. 670.

It is immaterial whether the party misrepresenting a fact knows it to be false or makes the assertion of the fact without knowing it to be true. The result and the remedy are the same. A misstatement, not known to be true, made with a view of inducing another to buy and which the other relies upon, believes to be true and purchases on the strength

of it, is equally actionable with a known false statement. Mitchell v. McDougall, 62 Ill. 498; Allen v. Hart, 72 Ill. 104; Thorne v. Prentiss, 83 Ill. 99; Ruff v. Jarrett, 94 Ill. 479; Borders v. Kattleman, 142 Ill. 103; Bulitt v. Farrar, 42 Minn. 8.

Where the vendor and vendee are not contracting on an equal footing and the latter is induced to purchase because of false statements of the former the rule of *caveat emptor* has no application. Wannell v. Ken, 57 Mo. 478; Chaney v. Powell, 88 Ga. 629 and cases there cited; Parham v. Randolph, 4 How. (Miss.) 435–451; 1 Bigelow on Frauds, 528; Kerr on Frauds and Mistakes, 81; Beetle v. Anderson (Wis.), 73 N. W. Rep. 560.

A party guilty of fraudulent conduct whereby he induces another to execute a written contract will not be allowed to cry "negligence" as against his own deliberate wrong. Linington y. Strong, 107 Ill. 295; Hale v. Philbrick, 42 Ia. 81; Mattock v. Todd, 19 Ind. 130; Starkweather v. Benjamin, 32 Mich. 305.

Whether representations are false affirmations of fact or mere opinions, where there is evidence from which either might be inferred, is a question for the jury to determine and its determination is final. Simar v. Cannaday, 53 N. Y. 306; Moses v. Katzenberger, 84 Ala. 95; Brown v. Freeman, 79 Ala. 406; Messer v. Smith, 59 N. H. 41; Banta v. Savage, 12 Nev. 151; Com. v. Jackson, 132 Mass. 16; Van Velser v. Seeberger, 59 Ill. App. 322; Story on Contracts, Sec. 507.

MR. JUSTICE HIGBEE delivered the opinion of the court.

The only questions presented by this record, as correctly stated by counsel for appellant, are whether the evidence sustained the verdict in behalf of appellee, and the jury were properly instructed.

In regard to the latter point the only objection presented is, that the first instruction given for appellee was erroneous. This instruction contained a brief statement of appellee's case, but the part objected to was that which instructed the jury that if they believed from the evidence:

"That before and at the time of the purchase of said stock and the giving of said note, the plaintiff made representations and statements to the defendant concerning the value of such stock, and the business being done by said company, and its financial condition; that said statements and representations were false; that defendant was a stranger in the city of Rockford and had no adequate means of ascertaining the truth or falsity of said statements; that relying upon said statements of said plaintiff as true, the said defendant purchased said stock and gave said note in payment thereof; and if you further believe from the evidence that the plaintiff at the time of making of said statements and representations, knew the same to be false, or had reason to believe that the same were untrue, then if you still further believe from the evidence that the defendant has already paid in cash and upon said note to the plaintiff all or more than said stock was fairly and reasonably worth at the time of the purchase thereof, and that as to the balance now remaining unpaid upon said note, the consideration for said note has failed, then you should find for the defendant."

It is said that this instruction "ignores the question as to whether the representations of fact were material to the sale or whether they were known to be false by appellant or whether the appellee had the right to rely on the same." The instruction, however, expressly submitted to the jury the question whether appellee relied upon the statements and representations of appellant at the time of purchase of stock; and also whether such statements and representations were false and known to be so by appellant. The objection therefore fails as to the above particulars. But the principal question raised by the instruction, and that upon which the decision of the case must largely rest, is whether or not appellee had a right to rely upon the representations made to him by appellant. It is true that a vendor has a right to extol the value of his own property to the highest point his antagonist's credulity may bear.

"Ordinarily, statements of an indefinite or general character made by either of the parties, pending a negotiation for the sale of property, relating to its cost or value, or offers made for it and the like, will not, in the absence of special circumstances, afford any ground 'for avoiding the

sale, although false, and made with a fraudulent intent."
Dillman v. Nadelhoffer, 119 Ill. 567.

But it is also held in the case above cited that it is just as
well settled that where contracting parties for any cause,
are not on equal terms, and such representations are gross
exaggeration, resulting in an unconscionable bargain, the
above rule will not apply.

Where the vendor and vendee are not contracting on an
equal footing, and the latter is induced to purchase because
of false statements of the former, the rule of *caveat emptor*
has no application. Wannell v. Ken, 57 Mo. 478; 1 Bigelow
on Frauds, 528.

If, then, the appellee was a stranger in the city of Rock-
ford and had no adequate means of ascertaining the truth
or falsity of the statements made by appellant, and the same
being false were relied upon by the appellee as true, the two
parties were not contracting upon equal footing. We are
of opinion that there was no error in the instruction and it
was properly given.

It remains to be considered whether the evidence was
sufficient to sustain the verdict. There was little evidence
in the case bearing upon the issue save that of appellant and
appellee. If the statements made by appellee in his testi-
mony were true, the verdict was proper. The jury heard
the testimony of the two parties and believed the former as
they had a right to do. There was a sharp conflict in the
testimony of the two parties and appellee was corroborated
to some extent, by the written agreement signed by them
and the undeniable fact that the price charged him for the
stock was greatly in excess of its actual value.

The law of the case was correctly given to the jury and
we can not say that the verdict was against the weight of
the evidence.

The judgment will therefore be affirmed.