ELIPAS ENTERPRISES, INC., *et al.*, Plaintiffs-Appellants, v. ROBERT SILVERSTEIN, Defendant-Appellee.

First District (6th Division)   No. 1—91—3259

Opinion filed February 11, 1993.

Michael G. Cainkar, of Louis F. Cainkar, Ltd., of Chicago, for appellants.

Louis D. Bernstein and Karin T. O'Connell, both of Gould & Ratner, of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

The plaintiffs, Elipas Enterprises, Inc. and James Elipas, filed a four-count complaint against the defendant, Robert Silverstein, based on alleged representations made to the plaintiffs by the defendant. Count III alleged a violation of the Consumer Fraud and Deceptive

Business Practices Act (the Act) (Ill. Rev. Stat. 1989, ch. 121½, par. 261 *et seq.*). The defendant filed a motion to dismiss pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619). The trial judge allowed the section 2—615 motion and dismissed the entire complaint. The plaintiffs have appealed only the order dismissing count III. Our recitation of the facts is based on the allegations of the complaint which must be taken as true.

The plaintiff, James Elipas (Elipas), is a doctor of podiatry. In 1988, Elipas considered purchasing a franchise for a Love's Yogurt restaurant. In October 1988, Elipas met with the defendant, Robert Silverstein (Silverstein), who was president and director of Love's Group, an Illinois corporation in the business of franchising Love's Yogurt restaurants. After the meeting, Elipas received an offering circular and promotional brochure that detailed the organizational structure and requirements for opening a Love's Yogurt restaurant.

Both the offering circular and promotional brochure indicated that Love's Group had experience in selecting restaurant locations and would assist a franchisee in choosing a future site. The promotional brochure enumerated a variety of factors that Love's Group considered in determining a site selection, including demographic profiles, population densities, growth potential, competitors and traffic counts. The brochure also represented that "Love's management team has experience in location choice and will help you select the best site possible." After reviewing the brochure and circular, Elipas applied for a Love's franchise and paid a $1,000 refundable deposit. Elipas, however, did not execute a full franchise agreement and the $1,000 deposit paid could be fully refunded at any time, "No questions asked."

Before executing the final agreement, Elipas formed a corporation to operate the prospective franchise under the name of "Elipas Enterprises, Inc." Also before the agreement was executed, Silverstein advised Elipas that a lucrative restaurant location was available from Love's Group at the Buffalo Grove Town Center, a high-traffic shopping center. Specifically, Silverstein made three oral representations: (1) a Pier One Import store was to be the shopping center's anchor and "it was presently committed to leasing a location in the Buffalo Grove Town Center and would open in the near future"; (2) a movie theatre chain "was presently committed to leasing a location in the Buffalo Grove Town Center and would open in the near future"; and (3) a band shell "would be erected on property adjacent to the Buffalo Grove Town Center where concerts and related activities would be held."

Based upon the oral representations made by Silverstein, coupled with the representations made in the offering circular and promotional brochure, Elipas signed an agreement on January 23, 1989, and tendered to Love's Group the required $17,500 franchise fee. The agreement stated that the location of the restaurant would be at the Buffalo Grove Town Center.

The agreement, a 36-page document, contained six separate "Representations and Warranties" including the following:

"Franchisee acknowledges and represents to Company to induce Company to enter this Agreement, as follows:

* * *

C. Franchisee has not received or relied upon any guarantee, express or implied, about the revenues, profits, or success of the business venture contemplated by this Agreement or the desirability of the Location (as defined herein) of the Restaurant * * *."

In addition, the agreement recited that Elipas:

"[h]as conducted an independent investigation of the business * * *. Franchisee recognizes that the nature of the business conducted by the restaurant may evolve and change over time, that an investment in the restaurant involves business risks and that the success of the venture depends primarily upon Franchisee's ability and efforts."

The agreement provided that Elipas could choose the location of the restaurant, subject to approval by Love's Group. Love's Group had chosen the Buffalo Grove Town Center for one of its restaurants and informed Elipas of its availability in December 1988. Love's Group signed a lease with the lessor of the Buffalo Grove Town Center on February 15, 1989. On February 28, 1989, Love's Group assigned the lease to Elipas Enterprises, Inc. The plaintiffs' Love's Yogurt restaurant opened in the Buffalo Grove Town Center in the spring of 1989.

A Pier One store and a movie chain never moved into the Buffalo Grove Town Center; neither had ever committed to a lease. The band shell turned out to be a gazebo. Over 18 months after opening the restaurant, Elipas incurred substantial losses. The restaurant closed in November 1990. The closing was the "result of the low volume of pedestrian traffic at the Buffalo Grove Town Center due to a lack of tenants."

The plaintiffs filed this lawsuit on March 7, 1991. They did not name Love's Group as a defendant due to a mandatory arbitration clause in the franchise agreement.

On September 6, 1991, the judge dismissed all four counts of the complaint with prejudice. The plaintiffs requested time to file an amended complaint. The judge replied, "I think under the facts I doubt any actionable claim could be stated. A better claim would be stated, but I'm not sure an actionable claim could be stated." The plaintiffs did not move for leave to file an amended complaint; instead, they filed a notice of appeal.

■ In determining the propriety of dismissal of an action under section 2—615, a reviewing court is concerned only with questions of law presented by the pleadings, and the court tests the sufficiency of the complaint by ascertaining whether the essential elements of a cause of action were alleged. (*In re Estate of Casey* (1991), 222 Ill. App. 3d 12, 583 N.E.2d 83.) To state a cause of action under the Act, a plaintiff must allege (1) a deceptive act or practice, (2) intent on the defendant's part that the plaintiff rely on the deception, and (3) that the deception occurred in the course of conduct involving trade or commerce. (Ill. Rev. Stat. 1989, ch. 121½, par. 262.) The defendant contends that the plaintiffs must also allege and prove that they justifiably or reasonably relied on the representations made by the defendant. The plaintiffs deny that reasonable reliance is an element of any cause of action under the Act.

Both sides have argued extensively on the question of whether a promise of future conduct represents deception under the Act. The defendant points specifically to the allegations that the defendant told Elipas that a Pier One Import store and a movie theater would open in the near future and that a band shell would be erected adjacent to the Buffalo Grove Town Center. We have determined that we need not address the parties' arguments on this point because we have determined that the complaint failed to allege facts that would support a finding that the plaintiff had reasonably relied upon the representations of the defendant before the plaintiff signed the agreement, even if the representations were actionable. In addition, the allegation that the Pier One store and theater were "presently committed" could be liberally construed to be an allegation of an existing fact, although the term "committed," which we will discuss later, is vague.

■ It is clear that a claim for common law fraud must allege facts that would support a finding that the plaintiff had justifiably relied on the statements of the defendant. (*Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 402 N.E.2d 559.) It is also clear, however, that a distinction exists between actions for common law fraud and actions under the Act in that an action under the Act does not require an intent by the defendant to misrepresent, while actions for common

law fraud do require such intent. (*People ex rel. Fahner v. Walsh* (1984), 122 Ill. App. 3d 481, 461 N.E.2d 78.) Consequently, we must conclude that not all the elements of common law fraud are necessarily included in all actions under the Act. We note that the Act provides that a violation of the Act may occur "whether any person has in fact been misled, deceived or damaged thereby." (Ill. Rev. Stat. 1989, ch. 121½, par. 262.) The supreme court noted that the absence of any requirement of actual reliance under the Act was significant. *Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534.

We believe that there is a reason why the Act itself does not expressly require justifiable reliance in all cases. Section 7 of the Act (Ill. Rev. Stat. 1989, ch. 121½, par. 267) grants the Attorney General and the State's Attorney the exclusive power to file injunction actions against persons they believe have engaged in or are about to engage in deceptive practices. Obviously those public officials need not establish that they have relied on deceptive practices of a defendant. But we do not believe that any private person seeking money damages (or rescission of a contract) may seek relief under the Act without establishing justifiable or reasonable reliance. We point out that two cases have held expressly that justifiable or reasonable reliance by the plaintiff is required to support a claim under the Act. See *I K Corp. v. One Financial Place Partnership* (1990), 200 Ill. App. 3d 802, 558 N.E.2d 161; *Lidecker v. Kendall College* (1990), 194 Ill. App. 3d 309, 550 N.E.2d 1121.

The plaintiffs further contend alternatively that reasonable reliance is always a question of fact that may not be decided on a motion to dismiss. There are several cases, beginning with *Dillman v. Nadlehoffer* (1886), 119 Ill. 567, 7 N.E. 88, which have upheld orders dismissing complaints for failure to allege facts sufficient to support a finding of reasonable reliance. (See *I K Corp. v. One Financial Place Partnership* (1990), 200 Ill. App. 3d 802, 558 N.E.2d 161; *Runnemede Owners, Inc. v. Crest Mortgage Corp.* (7th Cir. 1988), 861 F.2d 1053; *cf. Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 169 N.E.2d 229 (supreme court upheld judgment on the pleadings in favor of defendant for failure of a complaint to aver facts to establish justifiable reliance by plaintiff).) We believe that those cases upholding judgment for the defendant based on the allegations of the complaint are persuasive here.

In *Dillman v. Nadlehoffer*, the plaintiff invested in a co-partnership with the defendant in reliance on the defendant's alleged false representation that he held valid patents for which he had been offered a substantial sum of money. Significantly, the partnership agree-

ment contained a provision in which the defendant expressly refrained from warranting the validity of the patents. The supreme court affirmed the order dismissing the complaint, observing that the provisions of the agreement "[were] enough to put [plaintiff] upon his guard." *Dillman*, 119 Ill. at 578.

In *I K Corp. v. One Financial Place Partnership*, two tenants occupied premises owned by the defendant. The defendant told the plaintiff that those tenants were not going to renew their leases and that those parts of the premises would be available to the plaintiff. The plaintiff entered into a lease with the defendant which provided that the agreement was "subject to prior leasing, prior acceptance and lender approval." (*I K Corp.*, 200 Ill. App. 3d at 807.) The two tenants did not move out, and the plaintiff was unable to obtain a lease in the defendant's building. The trial judge allowed the defendant's motion to dismiss the complaint, which included a count based on the Act. The appellate court affirmed the trial judge and noted that the defendant's statements that the lease by one of the existing tenants had been terminated and that the premises were available were statements of law. Invoking the general rule that one is not entitled to rely on a representation of law since both parties are presumed to be capable of knowing and interpreting the law, the appellate court observed that a "simple contract [sic] with [the existing tenant] by [the plaintiff] would determine whether in fact its lease had been terminated." (*I K Corp.*, 200 Ill. App. 3d at 816.) The appellate court concluded that the plaintiff's reliance on the representations of the defendant was not reasonable as a matter of law.

In *Runnemede Owners, Inc. v. Crest Mortgage Corp.* (7th Cir. 1988), 861 F.2d 1053, the plaintiff negotiated for a loan from the defendant, a corporation. The defendant signed a letter labeled "commitment letter," which agreed to make the loan subject to certain conditions, including approval of the agreement by the defendant's loan committee.

The defendant's chairman told the plaintiff not to worry about the loan committee. On two occasions, the chairman told the plaintiff, "We have a deal." (*Runnemede*, 861 F.2d at 1055.) The plaintiff interpreted the chairman's remarks to be a guarantee that the loan would be approved, and he paid the defendant part of the commitment fee. The loan was later disapproved by the defendant's president.

The court of appeals affirmed the order dismissing the complaint for fraud, holding as a matter of law that the plaintiff was not justified in relying on the chairman's statements in view of the express conditions of the contract.

■ In *Schmidt v. Landfield* (1960), 20 Ill. 2d 89, 169 N.E.2d 229, the plaintiff executed a release with the defendant, a lawyer, based on the defendant's alleged representation that a mortgage covered only a leasehold interest on property when in fact the property was held in fee. The supreme court affirmed an order granting the defendant judgment on the pleadings, relying on *Dillman v. Nadlehoffer.* The court added:

"The rule is well established that a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge; and if he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations. [Citations.]" *Schmidt,* 20 Ill. 2d at 94.

We turn now to the facts to determine whether the plaintiff has met the requirements of the principle enunciated in *Schmidt v. Landfield.* The plaintiff was a doctor of podiatry, who organized a corporation to operate a franchise; he was not an unsophisticated bargainer. The express terms of the agreement warned him that the defendant's principal was not guaranteeing the "desirability of the location" of the restaurant.

The plaintiff knew that the defendant had no relationship with Pier One, the movie chain and, most importantly, no relationship with the lessor. Indeed, Love's Yogurt had itself not yet signed a lease with the lessor. Consequently, the plaintiff had to know that any representations by the defendant of any relationship between the lessor and other tenants would be based at best on secondhand information. In this regard, the facts here militate even more strongly for the defendant than the cases we have cited, beginning with *Dillman v. Nadlehoffer.*

■ The plaintiff does not elaborate on what kind of "commitment" the defendant told him Pier One and the movie chain had made to the lessor. We are unable to tell whether the commitment the defendant was referring to was an oral handshake agreement lacking enforceability, or if he was referring to a legally binding agreement. If he was referring to a legally binding agreement, it was a statement of law. As a general rule one is not entitled to rely on a representation of law since both parties are presumed to be capable of knowing and interpreting the law. (*Dillman,* 119 Ill. at 578; *I K Corporation,* 200 Ill. App. 3d at 816.) If the defendant was referring to an unenforceable agreement between Pier One, the movie chain and the lessor, the

plaintiff would have even more reason to investigate further. In sum, the statement was vague, and it was made by a person who had no responsibility with the putative tenants or the lessor. (See *Dillman*, 119 Ill. at 578.) The lessor of the Buffalo Grove Town Center possessed accurate information regarding the leasing status of the Pier One store and movie chain. As the trial judge observed, for an accurate representation about the leasing status of the third parties, the plaintiff should have turned to the lessor, not the defendant.

The case cited by the plaintiff, *Salkeld v. V.R. Business Brokers* (1989), 192 Ill. App. 3d 663, 548 N.E.2d 1151, is not in point. In *Salkeld*, the franchisor made false statements about its own franchise.

For these reasons, we agree that the trial judge correctly concluded that the plaintiff could not establish justifiable reliance as a matter of law and that he properly dismissed the complaint.

The judgment of the circuit court is affirmed.

Judgment affirmed.

McNAMARA, P.J., and RAKOWSKI, J., concur.