JOSEPH L. MACK, Plaintiff-Appellant, v. PLAZA DEWITT LIMITED PARTNERSHIP *et al.*, Defendants-Appellees.

First District (4th Division) No. 83—1885

Opinion filed October 10, 1985.

Edward T. Joyce and Peter Ordower, both of Chicago (Joyce & Kubasiak, P.C., of counsel), for appellant.

Levy & Erens, of Chicago (William E. Rattner and Mark A. Rabinowitz, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Joseph L. Mack (Mack) filed suit in the Cook County circuit court against Plaza Dewitt Limited Partnership; A-1 Dewitt Corp.; American Invs-Company Management, Inc.; American National Bank & Trust Company as trustee under trust No. 90831; American National Bank & Trust Company as trustee under trust no. 40629; and Unknown Beneficiaries (hereinafter collectively referred to as Developer). The action was brought as a class action suit on behalf of Mack and all other past, present, and future owners of residential units of a building situated in Chicago and commonly known as the Plaza on De-Witt Condominium (the Plaza). Mack claimed that he had purchased a residential condominium unit in the building in 1977.

In the pleading, Mack stated that the Developer had developed and marketed the Plaza, had prepared and recorded its declaration of condominium ownership, and owned certain commercial units in the building. He alleged in substance that the Developer had miscomputed the percentage interest of common element ownership of each of the unit owners as these percentages were stated in the declaration.

Mack claimed that the Developer had committed such miscomputation by overstating the value of the residential units and understating the value of the commercial units. He contended that such error in the percentage interest of the residential unit owners caused them to bear a disproportionately greater share of the real estate taxes, common element expenses, and operating costs of the Plaza; the commercial unit owners, consequently, bore a disproportionately smaller share of these taxes, expenses, and costs.

As ultimately amended, Mack's complaint alleged that such errors in computation violated the provisions of the Illinois Condominium Property Act (Ill. Rev. Stat. 1981, ch. 30, par. 301 et seq.) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, pars. 261 et seq.). Based on these allegations, Mack's pleading requested a declaratory judgment (count I), damages for statutory fraud (count II), and damages for common law fraud (count III).

The trial court dismissed the complaint and denied Mack leave to amend pursuant to Developer's motion to strike and dismiss the com-

plaint in accordance with sections 2—615 and 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 2—615, 2—619). Mack appeals from that order.

The parties raise the following questions for our review:

1. Whether count I of the amended complaint stated a claim for declaratory judgment;

2. Whether counts II and III stated claims for statutory and common law fraud;

3. Whether count II of the amended complaint was barred by the statute of limitations;

4. Whether Mack's claims were appropriate for class certification.

We conclude that counts I, II, and III failed to state claims for the relief requested. Accordingly, we affirm the order of the court below.

BACKGROUND

Mack filed his first class action complaint for equitable and other relief against the Developer on May 20, 1981. The pleading was in five counts, and requested relief based upon theories of: (1) violation of the Illinois Condominium Property Act (Ill. Rev. Stat. 1981, ch. 30, par. 301 *et seq.*); (2) unjust enrichment; (3) common law fraud; (4) violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*); and (5) breach of fiduciary duty.

The Developer filed a motion to dismiss the complaint for failure to state a claim. (Ill. Rev. Stat. 1981, ch. 110, par. 2—615.) The trial court granted the motion and struck the pleading, but granted Mack leave to file an amended complaint.

The amended pleading was filed by Mack on November 30, 1982. It was comprised of three counts: (1) an action for a declaratory judgment (count I); (2) an action for fraud based upon alleged violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*) (count II); and (3) an action for common law fraud (count III).

Pertinent allegations of the complaint stated the following. First, Mack made several substantive allegations applicable to all counts of the complaint. Initially, Mack alleged that each unit owner was required to pay a proportionate share of the real estate taxes, common expenses and operating costs in accordance with the unit owners' percentage of ownership interest in the common elements of the Plaza. He claimed that each unit owner's percentage of ownership interest in the common elements had been calculated by the Developer and was set forth in the declaration of condominium ownership for the Plaza,

which had been prepared and recorded by the Developer.

Mack alleged that the Illinois Condominium Property Act (Ill. Rev. Stat. 1981, ch. 30, par. 301 *et seq.*) requires that the percentage of ownership interest in the common elements be computed "by taking as a basis the value of each unit in relation to the value of the property as a whole." (Ill. Rev. Stat. 1981, ch. 30, par. 304(e).) He stated in addition that the Plaza Condominium Declaration stated that "the percentages of ownership interest set forth in [the Declaration] have been computed and determined in accordance with the Act * * *."

Mack claimed that the Developer did not, however, compute the percentages of ownership interest in the common elements as the Act required. He contended that the Developer did not use the fair market value of the commercial units as a basis for computation of percentage interest. Instead, according to Mack, the Developer substantially undervalued the commercial units.

Mack alleged that this undervaluation of commercial units caused the Developer to pay much less than its proportionate share of the real estate taxes, common expenses, and operating costs of the Plaza. In addition, he contended that it also caused an exaggeration in the percentage interest of residential unit holders, such that these individuals were paying more than their proportionate share of the real estate taxes, common expenses, and operating costs of the Plaza.

Mack stated that when he had purchased his unit in the Plaza, he had had no independent means to verify the Developer's computation of common element ownership interest. He claimed that he had not been able to obtain independent appraisals of each commercial unit and an appraisal of the building as a whole since the information necessary for such appraisals had been in the exclusive possession of the Developer. Mack further stated, "Experience has showed [*sic*], however, that the commercial units at the Plaza were using a disproportionately high amount of the Plaza Services, including heating and air conditioning, in comparison to the monthly assessments that the Developer had paid as owner of the commercial units."

Mack alleged that the Developer's building manager knew that the commercial units used a disproportionate share of the Plaza's services and that the Developer, as owner of the commercial units, did not pay its proportionate share of the real estate taxes, common expenses, and operating costs. He further claimed that the Developer's building manager failed to disclose this fact to the residential unit owners, and instead concealed it so the Developer could continue to benefit by paying less than its fair share. Mack stated that it was only when the employment of the Developer's manager was terminated

that the commercial units' disproportionate use of Plaza services was uncovered and the present action instituted.

Based upon these allegations, count I of the complaint requested a declaratory judgment wherein the court would declare the rights and liabilities of the parties under the terms and provisions of the Condominium Property Act and the Plaza Condominium Declaration. In this regard Mack requested that the court enter an order which determined that: (1) the percentages of ownership interest in the common elements allocated to the commercial units at the Plaza were not computed and determined in accordance with the Illinois Condominium Property Act; (2) as a result of this miscomputation, the Developer and all other owners of the commercial units had paid and would continue to pay a disproportionately lower percentage of the taxes, common expenses, and operating costs of the Plaza; (3) as a result of this miscomputation, the past, present, and future owners of residential units had paid and would continue to pay a disproportionately higher percentage of taxes, expenses, and costs; (4) pursuant to the provisions of the declaration and the Act, the owners of both the commercial and residential units at the Plaza should be required to pay a proportionate share of taxes, expenses, and costs in accordance with the ratio that the fair market value of their respective units bore to the fair market value of the Plaza as a whole at the time the Declaration was filed.

Mack also requested that the court enter judgment: (1) against the Developer and in favor of Mack for an amount equal to the difference between the amount of costs the Developer actually had paid and the amount the Developer should have paid if the percentage of common element ownership had been computed in accordance with the Act; and (2) which ordered that the Developer and all other present and future owners of the commercial units would pay costs in accordance with the proper ratio.

In addition to the allegations stated above, count II of the complaint which sought relief for statutory fraud contained the following pertinent allegations. Mack claimed that at the time the Developer prepared the Plaza Condominium declaration, it knew that all residential owners would be bound by and would have to rely upon the percentages of common element ownership which the Developer had computed. Mack alleged that in paying his share of taxes, expenses, and costs, he reasonably relied upon the Developer's representation, as stated in the declaration, that these payments were based upon a percentage of common element ownership interest for his unit computed and determined in accordance with the Act.

Mack contended that the Developer's representations, as stated in the declaration, were false, and that at the time such representations were made the Developer knew they were false. Specifically, Mack claimed that these representations were that: (1) the percentages of common element interest allocated to each unit were computed and determined in accordance with the Act; (2) each unit owner would be required to pay only a proportionate share of taxes, expenses, and costs, based upon the percentage of common element ownership interest computed in accordance with the Act.

Mack alleged that by reason of these false representations, acts, and omissions of the Developer, the Developer had defrauded Mack, violated the Illinois Consumer and Deceptive Business Practices Act (Ill. Rev. Stat. 1981, ch. 121½, par. 261 *et seq.*), and injured Mack by causing him to pay a disproportionate share of taxes, expenses and costs.

Based upon these allegations of statutory fraud, Mack requested damages to compensate him for the excessive payments he had made in the past and may make in the future.

In count III of the amended complaint, Mack sought damages for common law fraud. In this count of the pleading, Mack incorporated and realleged those allegations he had made in count II based upon statutory fraud. He claimed that by reason of the Developer's false statements, acts, or omissions, Developer had cheated and defrauded him, and thereby caused him damage. He requested the same relief as he had with regard to count II.

Developer responded to Mack's amended complaint through the filing of a motion to dismiss the action and to strike the amended complaint which relied upon sections 2—615 and 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, pars. 2—615, 2—619). Developer also filed a memorandum in support of the motion which specified several grounds for dismissal. Thereafter Mack filed his memorandum in opposition to Developer's motion, to which Developer later filed a reply.

The trial court held its hearing on the matter on July 7, 1983. Based upon the parties' pleadings and written and oral argument, the court granted Developer's motion to dismiss the complaint. The court's written order, entered July 7, struck the amended complaint, dismissed the action in its entirety, and denied Mack leave to further amend the complaint. Mack's timely appeal followed.

OPINION

The initial issue to be addressed is whether count I of Mack's

amended complaint stated a claim for declaratory judgment. For purposes of review, all well-pleaded facts in the pleading stand admitted and will be accepted as true. *Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 129, 448 N.E.2d 591.

Section 2—701 of the Illinois Code of Civil Procedure provides in relevant part that a trial court "may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of [a] *** written instrument, and a declaration of the rights of the parties interested." (Ill. Rev. Stat. 1981, ch. 110, par. 2—701(a).) Thus the essential requirements of a declaratory judgment action are: " '(a) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests, though there need not be any act in violation of such interests.' " *De Witt County Public Building Com. v. County of De Witt* (1984), 128 Ill. App. 3d 11, 16, 469 N.E.2d 689, quoting *Griffin v. County of Cook* (1938), 369 Ill. 380, 393, 16 N.E.2d 906 (Stone, J., specially concurring).

The remedy of a declaratory judgment is cumulative of other forms of relief. (Ill. Rev. Stat. 1981, ch. 110, par. 2—701(b).) It is not deemed to create in itself substantive rights or duties, however, but instead merely affords an additional procedural method for their judicial determination. (*La Salle Casualty Co. v. Lobono* (1968), 93 Ill. App. 2d 114, 117, 236 N.E.2d 405.) Because the remedy is strictly procedural, an action for such relief must state a claim based upon particular substantive legal theories. *Denkewalter v. Wolberg* (1980), 82 Ill. App. 3d 569, 571, 402 N.E.2d 885; *Preferred Risk Mutual Insurance Co. v. Hites* (1970), 125 Ill. App. 2d 144, 149-50, 259 N.E.2d 815.

In this appeal Mack claims that count I of the complaint relies not upon the Illinois Condominium Property Act, but instead upon the substantive legal theories of common law and statutory fraud. Developer argues first that count I does indeed rely upon the Condominium Property Act. In this regard it claims that the count fails to state a cause of action based upon the Act because the only remedy for which the Act provides, in the event of a Developer's failure to make full disclosure of all required information, is rescission of a contract for the purchase of a condominium unit prior to closing of the sale. (See Ill. Rev. Stat. 1981, ch. 30, par. 322; *Luster v. Jones* (1979), 70 Ill. App. 3d 1019, 1031-34, 388 N.E.2d 1029.) Developer further contends

in the alternative that even if count I is dependent upon the legal jurisprudence of statutory and common law fraud, it is nevertheless deficient because the facts fail to state a claim based upon the rules with regard to those legal theories.

■■ Since Mack argues that his request for declaratory relief is based upon his allegations of common law and statutory fraud, we consider first whether the counts of his complaint which contained pleadings relevant to these theories stated claims therefor.

With regard to statutory fraud, section 2 of the Consumer Fraud Act (Ill. Rev. Stat. 1981, ch. 121½, par. 262) provides in pertinent part:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act', approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

To state a claim for common law fraud, a plaintiff must plead facts which prove that any misrepresentations were: (1) false statements of material fact; (2) known or believed to be false by the party making them; (3) intended to induce the other party to act; (4) acted upon by the other party in reliance upon the truth of the representations; and (5) damaging to the other party as a result of such reliance. *Shah v. Chicago Title & Trust Co.* (1983), 119 Ill. App. 3d 658, 660, 457 N.E.2d 147.

Thus, although violation of the Consumer Fraud Act is not the same as the commission of a common law fraud (*Barr Co. v. Safeco Insurance Co. of America* (N.D. Ill. 1984), 583 F. Supp. 248, 258) and the elements of each are not identical (*Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 272-73, 361 N.E.2d 815), both statutory and common law fraud require proof of a misrepresentation of a material fact. See *Shah v. Chicago Title & Trust Co.* (1983), 119 Ill. App. 3d 658, 662-63, 457 N.E.2d 147.

A misrepresentation is "material" and therefore actionable if it is such that had the other party been aware of it, he would have acted differently. (*Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 197, 380 N.E.2d 1040.) In other words, the misrepresented condition must

be an essential element to the transaction between the parties. *Giacomazzi v. Urban Search Corp.* (1980), 86 Ill. App. 3d 429, 432, 407 N.E.2d 621.

Mack's pleadings stated that the Plaza was comprised of 407 units. The Plaza Condominium declaration set forth the percentage interest of common element ownership of each of these units. Our review indicates that this percentage interest was usually between 0.130% and 0.200%. Mack's complaint alleged that these percentage interests were manipulated by the Developer such that those of the residential units were greater than Mack thought they should have been according to their fair market value, whereas those of the commercial units were less than Mack thought they should have been according to their fair market value.

■ Based upon these allegations, we cannot say that any assumed misrepresentation in the percentage interest of common element ownership would have been of such essential importance to a prospective unit owner that no purchase of the unit would have been made. Each percentage interest was stated in thousandths of one percent; thus any misstatement was a fractional amount of one percentage point, and was, in any event, only one of many features to be considered in the purchase of any given unit. Moreover we note that, since the percentage ownership in the common elements was an inherent part of the ownership of the condominium unit itself and thus an essential part of the real property which the unit represented (see Ill. Rev. Stat. 1981, ch. 30, par. 302(e)), any increase of a unit owner's percentage interest resulted in an increase in the value of the owner's real property interest.

Because we conclude that the pleadings of counts II and III fail to state facts which show that any alleged misrepresentation was material, we determine that all three of the counts of Mack's complaint were properly dismissed by the trial court for failure to state a claim. Accordingly, we need not address the other issues raised by the parties.

For the reasons stated, the order of the trial court is affirmed.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.