MARY C. LIDECKER *et al.*, Plaintiffs-Appellants, v. KENDALL COLLEGE *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—88—3630

Opinion filed January 19, 1990.—Rehearing denied February 20, 1990.

Henry Thrush Synek, of Chicago, for appellants.

James S. Whitehead and Jean F. Holloway, both of Sidley & Austin, of Chicago, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs Mary C. Lidecker, Antoinette Maglione, Maureen Baldridge and Mary Barrett were nursing students at defendant Kendall College in Evanston, Illinois, where defendant Dr. Andrew Cothran was president and defendant Albert L. Furbay was vice-president for academic affairs. Plaintiffs sued defendants after discovering that the school was not accredited. In a trial without a jury, the trial court granted defendants' motion for judgment at the close of plaintiffs' case in chief. Plaintiffs appeal, contending that the trial court's decision is against the manifest weight of the evidence because plaintiffs established their claims of common law and statutory fraud, and their claim for breach of contract.

The extensive transcript of proceedings has been thoroughly reviewed. The evidence is summarized here.

On December 12, 1985, plaintiffs filed a 105-page complaint alleging common law fraud, violations of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262 *et seq.*), violations of the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 312 *et seq.*), and breach of contract. Plaintiffs focused the theories on defendants' failure to affirmatively inform plaintiffs prior to their enrollment that the nursing program

was not yet eligible to receive accreditation by the National League for Nursing, Inc. (NLN), a private organization which accredits nursing education programs, and defendants' failure to communicate the significance of the lack of accreditation.

At the February 1988 trial, plaintiffs presented 11 witnesses, including defendants Cothran and Furbay, and Alma Labunski, the former director of Kendall's nursing program. Plaintiffs also introduced 70 exhibits into evidence.

Cothran testified that he had been Kendall's president since 1972. Furbay testified that he became Kendall's vice-president for academic affairs and dean of the college on October 1, 1983. Thus, he had no responsibility for preparation of the 1981-83 Kendall catalogue or other descriptive information distributed to plaintiffs. (Plaintiffs do not contest that fact, but still seek to impose liability upon Furbay). Labunski became director of the nursing program in March 1982. Labunski worked closely with most aspects of the college's request for NLN accreditation.

In 1976, Kendall began offering a four-year nursing program with a bachelor's degree. In November 1978, Kendall was given permission to initiate the nursing program by the Committee of Nurse Examiners of the Illinois State Department of Registration and Education. Its first class began in the 1979-80 academic year. Plaintiffs Lidecker and Maglione transferred to Kendall in fall 1982 as sophomores from Oakton Community College. Plaintiff Baldridge also entered the nursing program as a sophomore in fall 1982. Plaintiff Barrett reenrolled as a sophomore in fall 1982.

The catalogue described a program which would prepare students for "entry-level positions" in nursing; prepare students "for licensure as Registered Nurses"; "prepare students for the practice of professional nursing" and the delivery of health care. The catalogue stated that Kendall was empowered by relevant agencies to offer the nursing program. There was no reference to accreditation by any professional group. In fact, NLN accreditation could not be received until the program graduated its first class of students in June 1983.

Plaintiffs testified that they made little or no effort to obtain information about the nursing program or accreditation prior to enrolling. Baldridge never read the college catalogue. Barrett obtained no written material about the program. Lidecker and Maglione looked through the catalogue.

In fall 1982, plaintiffs were enrolled in Nursing 211. Labunski attended several class sessions. She informed the class that NLN was a voluntary, independent accrediting body that would evaluate the nurs-

ing program after the first class graduated in 1983. She explained the accreditation process. She also answered questions regarding accreditation and explained that accreditation was not necessary for the licensure examination or for obtaining employment. Lidecker and Maglione denied that Labunski ever discussed the significance of accreditation. Baldridge testified to the contrary. Plaintiffs sought no further information, but continued as students, although they could have transferred to another program at the end of their sophomore year without having to repeat any course work. They would then have received their B.S.N. degree in June 1985, as planned.

In February 1984, the NLN site-visitation team began its accreditation process. They met with nursing students to get their views of the school. On April 4, 1984, NLN voted to deny initial accreditation. Labunski then met with the students to inform them that the application had been denied and that Kendall would appeal the decision. In June 1984, the appeal was denied.

On July 2, 1984, Kendall officials met with the students. Students, including plaintiffs, who had completed their junior year could remain at Kendall for their final year. They could also transfer to another nursing program. However, they might not be given senior status in another program due to a different sequencing of courses, and might have to repeat their junior year. Ten of the fifteen members of that class returned to Kendall for their senior year. After graduation, nine immediately passed the State licensure examination, and the tenth graduate passed shortly thereafter. They were all employed in staff nursing jobs equal to those occupied by graduates from accredited programs. One entered a graduate nursing program. The four plaintiffs chose to transfer to Rush University, where they repeated their junior years and graduated in 1986. At trial, Baldridge testified she worked at Children's Memorial Hospital, where three Kendall nursing program graduates also worked. Lidecker worked at Glenbrook Hospital, where one Kendall graduate worked. Lidecker knew of five other Kendall graduates working as nurses in Chicago-area hospitals.

At the close of plaintiffs' case in chief, defendant moved for judgment pursuant to section 2—1110 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1110) on the grounds that plaintiffs failed to present sufficient evidence to warrant further proceedings. The parties submitted briefs, and the court granted the motion. On June 9, 1988, the trial court entered a written decision. On November 14, 1988, the court denied plaintiffs' motion for reconsideration.

■ ■ Plaintiffs first contend that the trial court's findings as to the fraud counts were against the manifest weight of the evidence.

Initially, we note that plaintiffs incorrectly assert that the trial court was obligated to view the evidence in a light most favorable to plaintiffs. Under section 2—1110 of the Code of Civil Procedure, in a case tried without a jury, defendant may move for a finding or judgment at the close of plaintiff's case. "In ruling on the motion the court shall weigh the evidence, considering the credibility of the witnesses and the weight and quality of the evidence." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1110.) The motion is properly granted, therefore, where plaintiff has failed to establish a *prima facie* case on any claim. (*Heller v. Jonathan Investments, Inc.* (1986), 113 Ill. 2d 60, 495 N.E.2d 589.) In order to establish a *prima facie* case, plaintiff must produce at least some credible evidence supporting each of the elements of each cause of action. (*Heller v. Jonathan Investments, Inc.*, 113 Ill. 2d 60, 495 N.E.2d 589.) If plaintiff produces some credible evidence, the court may still enter judgment for defendant if it determines plaintiff failed to present sufficient evidence to carry the burden of persuasion. (*Heller v. Jonathan Investments, Inc.*, 113 Ill. 2d 60, 495 N.E.2d 589.) We will not disturb that judgment unless it is contrary to the manifest weight of the evidence. *Greenwald v. Spring Hill Ford, Inc.* (1988), 173 Ill. App. 3d 857, 527 N.E.2d 1095.

■ Counts I, IV, VII and X allege common law fraud. Counts III, VI, IX and XII allege statutory fraud. Plaintiffs are required to prove the fraud counts by clear and convincing evidence. (*In re Application of Rosewell* (1985), 106 Ill. 2d 311, 478 N.E.2d 343.) The elements of common law fraud include a false statement or omission of material fact, which is made by defendant with the intent to deceive and induce plaintiff to act, plus justifiable reliance by plaintiff on the false statement or omission, and an actual injury to plaintiff as a result of the misstatement or omission. (*Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.* (1986), 114 Ill. 2d 278, 499 N.E.2d 1319.) Plaintiff must also establish that defendant has a duty to inform plaintiff of any allegedly omitted material fact. *Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 510 N.E.2d 409.

■ Similarly, the elements for a claim under the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1985, ch. 121½, par. 262 *et seq.*) are concealment, suppression or omission of a material fact, with the intent that others rely upon the concealment, suppression or omission, plus justifiable reliance by plaintiff. *General Motors Acceptance Corp. v. Grissom* (1986), 150 Ill. App. 3d 62, 501 N.E.2d 764.

■ While defendants failed to inform plaintiffs prior to their en-

rollment that the nursing program was not yet eligible for accreditation by the NLN, the trial court correctly found that plaintiffs "failed to present any evidence to prove that by the omission defendants intended to deceive or induce plaintiffs to act, or intended the plaintiffs to rely on the omission."

■ Plaintiffs argue that proof of intent to deceive is apparent from Kendall's "desperate need" for students, and the individual defendants' wish to enhance their reputations. The evidence does not support these assertions. On the contrary, the evidence shows that some nursing students would have entered, and many students remained at Kendall even after discovering the absence of accreditation. The entire 1985 nursing class, of which plaintiffs were members, chose to remain at Kendall after learning that it had not been accredited.

In regard to plaintiffs' failure to prove fraud, the trial court also found that plaintiffs failed to prove the omission proximately caused plaintiffs' alleged injury.

Plaintiffs maintain they were injured because they had to repeat their junior year course work after transferring from Kendall to another nursing program, and thus had to graduate one year later than planned. The evidence clearly shows, however, that plaintiffs were fully informed by Labunski during their sophomore year class in fall 1982. Baldridge testified that Labunski remained in the class for 30 minutes, answering all questions posed about accreditation, including questions as to whether accreditation was necessary to take the State licensure examination or for future employment. Although Barrett maintains she was not present in the class, she was responsible for the material covered in that class. Even in the face of this information, plaintiffs chose not to transfer. Instead, they remained through their junior year.

■ Plaintiffs argue, however, that defendants were required to go one step further and affirmatively spell out to plaintiffs that they would be adversely affected if accreditation were later denied. In view of the important information which had been given to plaintiffs in class, they were required to inquire further, and not sit idle, in regard to the precise significance of that information. (See *Madison Associates v. Bass* (1987), 158 Ill. App. 3d 526, 511 N.E.2d 690.) The mere hope that the accreditation would be successful does not excuse a duty to inquire further. Moreover, the evidence showed that future employment or graduate school opportunities were not necessarily adversely affected by graduation from a nonaccredited nursing program.

Plaintiffs also assert they were assured by Labunski and Cothran

that the program would become accredited. Predictions about the future are opinions and not actionable under a theory of fraud. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) Moreover, the trial court was entitled to give more weight to Labunski's testimony than to that of plaintiffs. The court's finding that plaintiffs failed to prove proximate cause is supported by the evidence.

■ In regard to plaintiffs' failure to prove fraud, the trial court also found, alternatively, that plaintiffs failed to prove the omission was material. Materiality can only be defined in the context of the transaction between the parties. (*Mack v. Plaza Dewitt Limited Partnership* (1985), 137 Ill. App. 3d 343, 484 N.E.2d 900.) Plaintiffs failed to show that ineligibility to receive accreditation was relevant to the achievement of Kendall's stated objectives. Kendall unambiguously publicized the program as a practitioner-oriented program which prepared students for licensure and entry-level employment. Plaintiffs failed to show that the absence of accreditation materially affected these stated purposes. Instead, Labunski and plaintiffs demonstrated that the opposite was true. For example, Garlisch testified for plaintiffs that Lutheran General Hospital hires graduates from unaccredited nursing programs. Labunski testified that lack of accreditation would be no bar to employment, and plaintiffs did not contradict this statement. Instead, the employment histories of nurses who graduated from Kendall revealed that employment was not a problem. Thus, while accreditation was desirable, it does not fulfill the materiality requirements in a fraud cause of action.

Plaintiffs argue the lack of accreditation was material based on Jane Loye's testimony that accreditation affected admission to the University of Illinois' master's program. Kendall, however, never held itself out to be a stepping stone to future graduate-level education. Moreover, Loye also testified that Illinois accepts graduates from non-accredited programs. In addition, Labunski testified that she had been assured by the deans of all Chicago-area master's programs that a Kendall degree would not bar an otherwise qualified applicant from admission.

Plaintiffs seek to rely on a "Thorpe survey" to establish materiality. The exhibit was prepared by Ms. Thorpe, a Kendall employee. Apparently it summarizes numerous out-of-court statements made to her by unidentified persons who were not employees or agents of Kendall. The conversations pertained to hiring practices of other hospitals. The court admitted the survey into evidence for the narrow purpose of identifying a document that was given to Lidecker in summer 1984. It

was not admitted for the truth of the matters contained therein. Plaintiffs' attorney expressly stated, in response to defendants' hearsay objection, that he was not offering the document for the truth of the matter asserted in it. The hearsay document cannot be used now as evidence supporting plaintiffs' charges.

In regard to the fraud claims, plaintiffs also complain that the court failed to make a finding as to the relationship between an applicant and the college, or between a student and the college. Plaintiffs maintain that there is a fiduciary relationship between plaintiffs and defendants because defendants were the "experts," in a "superior" position, and had "scienter of all material matters."

■ In order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak. (*Salisbury v. Chapman Realty* (1984), 124 Ill. App. 3d 1057, 465 N.E.2d 127; *Zimmerman v. Northfield Real Estate, Inc.*, 156 Ill. App. 3d 154, 510 N.E.2d 409.) In this case, however, it is not necessary to determine whether a fiduciary relationship exists because we have already held that the trial court's findings as to intent and materiality are overwhelmingly supported by the evidence.

We hold that the trial court's conclusion that plaintiffs failed to prove common law or statutory fraud by clear and convincing evidence was proper.

■ Next, plaintiffs contend the trial court erred in finding plaintiffs failed to prove breach of contract. Counts II, V, VIII and XI allege breach of contract. Plaintiffs must prove a breach of contract cause of action by a preponderance of the evidence. The trial court found that plaintiffs failed to show defendants made any promise that was not kept.

We agree with the trial court that the catalogue, plaintiffs' only evidence on this point, demonstrates the promises made included giving a four-year bachelor of science degree to prepare graduates to take the examination for licensure and prepare students for nursing practice. Plaintiffs introduced no credible evidence to show these promises were not kept. Plaintiffs' arguments that defendants offered an implied promise of a certain quality of education fail because there was no showing of such a promise, and even if there had been a promise, there was no breach of that promise. Most importantly, however, plaintiffs failed to prove defendants promised an accredited nursing program.

The court's findings in regard to proof of promises made by defendants to plaintiffs are well supported by the evidence. Thus, we

will not disturb the court's conclusion that plaintiffs failed to prove breach of contract by a preponderance of the evidence.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.