Mary C. CIRONE–SHADOW, on behalf of herself and all others similarly situated, Plaintiff,

v.

UNION NISSAN OF WAUKEGAN, Defendant.

No. 94 C 6723.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 5, 1997.

Cathleen M. Combs, Daniel A. Edelman, Tara Leigh Goodwin, Michelle Ann Weinberg, Edelman & Combs, Chicago, IL, James Eric Vander Arend, Gessler, Hughes & Socol, Ltd., Chicago, IL, O. Randolph Bragg, Chicago, IL, for plaintiff.

Michael Thomas McCormick, Gary Feiereisel, Terrence Franklin Guolee, Frank Kasbohm, Fraterrigo, Beranek, Feiereisel & Kasbohm, Chicago, IL, for defendant.

## *MEMORANDUM OPINION*

KOCORAS, District Judge:

This case is before the court on the plaintiffs' and defendant's cross-motions for summary judgment under Fed.R.Civ.P. 56 and the defendant's motion to strike. For the reasons set forth below, the defendant's motion for summary judgment is granted in part and denied in part, the plaintiffs' motion for summary judgment is denied, and the

defendant's motion to strike is denied without prejudice.

## BACKGROUND

The named plaintiff, Mary Cirone–Shadow ("Plaintiff") has filed this two-count class action complaint against the defendant, Union Nissan of Waukegan ("Defendant" or "Union Nissan"). Plaintiff is a citizen of Wisconsin. Defendant is a corporation with its principal place of business in Illinois. Jurisdiction is based on 28 U.S.C. §§ 1331, 1337, 1367. Plaintiff alleges that Defendant misrepresented amounts paid to third parties for service contracts in connection with the sale of automobiles. Count I alleges violation of the Federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* Count II alleges violation of the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et seq.* The facts pertinent to these claims are set forth below.

In February 1994 the plaintiff purchased a used 1989 Mercury Tracer from Union, an automobile dealership, for personal or household purposes. In connection with this transaction, Plaintiff and Union signed a motor vehicle "Retail Installment Contract" which also served as the disclosure statement required under TILA. As part of her purchase transaction, the plaintiff purchased an extended warranty or service contract, for which she was charged $800.00. In the Retail Installment Contract, Union Nissan represented that $800.00 was being disbursed to Autoright, the administrator of the extended warranty. Union Nissan disclosed its alleged disbursement to Autoright in the Retail Installment Contract under the section "Itemization of Amount Financed" as follows:

### Amounts Paid to Others for You

| | |
|---|---|
| Pay-off of Prior Loan | $ N/A |
| To _____ | |
| Insurance Companies | $ 226.02 |
| Public Officials ' | $ 10.00 |
| (License, Title & Taxes) | |
| To: Autoright | $ 800.00 |
| To: Doc Fee | $ 41.20 |
| To: N/A | $ N/A |

Complaint, Exhibit A.

In fact, Defendant did not pay Autoright the full $800 that Plaintiff paid under the contract. Rather, Defendant paid Autoright $385, retaining $415 for itself. In addition to claiming that the amount disclosed was inaccurate, the plaintiff further alleges that Union Nissan's manner of disclosing the amount allegedly disbursed to Autoright is misleading and deceptive. It is Plaintiff's claim that the $800.00 is simply a price that Union Nissan unilaterally determines for the warranty or contract and is therefore negotiable. The plaintiff alleges that by listing the $800.00 Autoright extended warranty disbursement among non-negotiable items such as taxes and license, title, and filing fees, Union Nissan deceptively portrayed the extended warranty disbursement as a non-negotiable item.

On April 19, 1995, this court granted Plaintiff's motion for class certification. The class consists of all individuals who satisfy four criteria: (1) consumers who purchased a service contract or extended warranty from Union Nissan; (2) whose transaction was financed by a retail installment contract; (3) whose transaction was documented as a consumer transaction; and (4) whose retail installment contract contains the form of representation alleged in the complaint to have been misleading.

The parties have filed these cross-motions for summary judgment on both the TILA and ICFA claims.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other material show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(b). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The party seeking summary judgment carries the initial burden of showing that no such issue of material fact exists. Pursuant to Rule 56(b), when a properly

supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue as to any material fact and that the moving party is not entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

In making our determination, we are to draw inferences from the record in the light most favorable to the non-moving party. We are not required, however, to draw every conceivable inference, but rather, only those that are reasonable. *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 329 (7th Cir.1987); *Bartman v. Allis-Chalmers Corp.,* 799 F.2d 311, 313 (7th Cir.1986), *cert. denied,* 479 U.S. 1092, 107 S.Ct. 1304, 94 L.Ed.2d 160 (1987). The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Howland v. Kilquist,* 833 F.2d 639, 642 (7th Cir.1987).

The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial". *Id.* at 323, 106 S.Ct. at 2552.

Applying these principles, we examine the parties' motions.

## DISCUSSION

We must decide two motions here. First, the parties have filed cross-motions for summary judgment on each of the plaintiffs' two claims: the Truth in Lending Act claim and the Illinois Consumer Fraud Act claim. We consider the two claims separately. Second, Union Nissan has filed a motion to strike. In the last part of the opinion, we rule on the latter motion.

*Cross–Motions for Summary Judgment*

## I. TILA Claim

### A. The Scope of TILA and "Materiality"

■ Defendant first argues that Plaintiff's complaint does not fall within the purview of TILA. Specifically, Defendant argues that TILA applies only to material disclosures relating to the cost of credit. Defendant cites to a number of provisions of TILA relating to its scope and purpose.

Under 15 U.S.C. § 1640, a creditor who violates any TILA requirement is entitled to actual damages and other relief. 15 U.S.C. § 1638, which governs the use of closed end credit plans (including financing for the sale of automobiles), provides that, upon request, a creditor shall provide an "itemization of the amount financed," including "each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person." 15 U.S.C. § 1638(a)(2)(B)(iii). Regulation Z, which was implemented pursuant to TILA, also provides that creditors shall disclose the "amount financed," and "a separate itemization of the amount financed," which includes "[a]ny amounts paid to other persons by the creditor on the consumer's behalf." 12 C.F.R. § 226.18(b), (c)(1)(iii).

Union Nissan provided the plaintiffs with the "itemization of amount financed." This itemization did include a section entitled "amounts paid to others for you." At least one of these amounts was apparently incorrect. It is thus clear that Union Nissan violated Regulation Z. Union Nissan argues that Congress only intended to allow relief for material disclosures, and that this is not a material disclosure under TILA. Its implicit argument is that the Federal Reserve Board ("the FRB") exceeded its authority in issuing the portions of Regulation Z that require disclosure of amounts paid to others. See 12 C.F.R. § 226.18(c)(1)(iii). However, it does not make this argument explicitly, forcefully, or persuasively. TILA provides that the FRB shall prescribe regulations to carry out the purposes of TILA. See 15 U.S.C. § 1604(a). It does not explicitly limit this authority. The conduct alleged to have oc-

curred constitutes a violation of the FRB's regulations. The FRB appears to consider this type of conduct to be "material." We recognize the FRB's discretion in this area, and the vitality of its mandates. Therefore, we reject the defendant's "materiality" argument.

### B.  Effect of Recent FRB Commentary

■ Union Nissan next argues that recent FRB commentary sanctions the conduct complained of here. Specifically, Union Nissan relies on the official FRB Commentary effective April 1, 1996, which states as follows:

*Charges added to amounts paid to others.*

A sum is sometimes added to the amount of a fee charged to a consumer for a service provided by a third party (such as for an extended warranty or a service contract) that is payable in the same amount in comparable cash and credit transactions. In a credit transaction, the amount is retained by the creditor. Given the flexibility required in meeting the requirements of the amount financed itemization (see the Commentary to Section 226.18(c)), the creditor in such a case may reflect that the creditor has retained a portion of the amount paid to others. For example, the creditor could add to the category "amount paid to others" language such as "(we may be retaining a portion of this amount)."

61  Fed.Reg.  14954  (new  Comment 226.18(c)(1)(iii)–(2)).

The courts of this district are split on the interpretation of this comment. They agree that this commentary gives the creditor discretion as to whether, when retaining a portion of the amount paid to third parties, the creditor must disclose the exact amount retained. However, they disagree as to whether there still exists an obligation to notify the consumer that the creditor is retaining a portion of the amount listed. A number of courts have held that no obligation exists— that a creditor retaining part of an amount listed as "paid to others" need not disclose that fact. *See Johnson v. Rohr–Ville Motors, Inc.,* 1996 WL 447261, at *3 (N.D.Ill. Aug.2, 1996) (Holderman, J.); *Taylor v. Quality Hyundai, Inc.,* 932 F.Supp. 218, 220

(N.D.Ill.1996) (Norgle, J.); *Gibson v. Bob Watson Chevrolet–Geo, Inc.,* 1996 WL 316975, at *3 (N.D.Ill. June 10, 1996) (Gettleman, J.); *Abercrombie v. William Chevrolet/Geo, Inc.,* 1996 WL 251435, at *2 (N.D.Ill. May 8, 1996) (Zagel, J.). However, this court and a number of others in this district and elsewhere, have held that, while the Commentary leaves the creditor discretion as to whether to state the amount retained, the creditor is nevertheless required to disclose the fact that the entire amount was not paid to the third person. *See McPhan v. Geo R. Gibson Chevrolet, Inc.,* 1996 WL 685449, at *4 (N.D.Ill. Nov.25, 1996) (Nordberg, J.); *Ritter v. Durand Chevrolet, Inc.,* 932 F.Supp. 32, 35 (D.Mass.1996) (Harrington, J.); *Lindsey v. Ed Johnson Oldsmobile, Inc.,* 1996 WL 411336, at *4 (N.D.Ill. July 19, 1996) (Kocoras, J.); *Alexander v. Continental Motor Werks, Inc.,* 933 F.Supp. 715, 718–19 (N.D.Ill.1996) (Kocoras, J.); *Bambilla v. Evanston Nissan, Inc.,* 1996 WL 284954 (N.D.Ill. May 21, 1996) (Leinenweber, J.). We are persuaded by the reasoning of the latter cases. Most convincing of the arguments is the fact that the supplemental Commentary to the Revisions states an intent to clarify that creditors have a new option under the new Commentary: they "may reflect that they have retained a portion of the 'amount paid to others', rather than disclosing the specific amount retained." 61 Fed. Reg. 14954 (Apr. 4, 1996). Significantly, the commentary does not leave as an option the failure to disclose at all the fact that an amount was retained. The final version of the Commentary appear to reflect the FRB's intent to reach a compromise, allowing creditors to choose whether to indicate the actual amount they have retained, but keeping intact the requirement that they indicate the fact that they have retained such an amount. *See generally Alexander,* 933 F.Supp. at 717–19 (discussing history of Commentary and its revisions).

Union Nissan did not disclose the fact that it retained a portion of the amount listed as paid to Autoright. Under the latter line of cases, this constitutes a violation of TILA. Therefore, we reject Union Nissan's argument on this issue.

## C. Causation

Union Nissan next argues that it is entitled to summary judgment because Plaintiff cannot prove causation. Specifically, it argues that Plaintiff is entitled only to actual damages—and not statutory penalties—and that she cannot prove any damages actually caused by Union Nissan. Plaintiff does not contest that statutory penalties are not appropriate here. She argues that actual causation is not necessary—that the amount of actual damages is "the difference between the disclosed charges and the actual charges." (Pltf. Memorandum at 29). Therefore, Plaintiff argues that summary judgment for the plaintiff class is appropriate.

The courts appear to be split on this issue. Union Nissan relies on the *Adiel* opinion, in which the court held that "[t]o recover actual damages, each member of the class must prove that 'he or she would have gotten credit on more favorable terms but for the violation.' " *Adiel v. Chase Fed'l Savings & Loan Assoc.*, 630 F.Supp. 131, 133 (S.D.Fla. 1986) (quoting *McCoy v. Salem Mortgage Co.*, 74 F.R.D. 8, 12 (E.D.Mich.1976)), *aff'd*, 810 F.2d 1051 (11th Cir.1987); *see also McCoy*, 74 F.R.D. at 12 (reaching same holding). One court in this district has adopted this same rule. In *Bambilla*, an almost-identical case, Judge Leinenweber held that actual damages must be limited to those "flowing from what was failed to be disclosed," such as the likelihood of a decision to look elsewhere for a service contract, or foregoing the contract altogether. *Bambilla*, 1996 WL 284954, at *5. He expressly rejected the plaintiffs' argument that "actual damages" should be equal to the amount of the upcharge. *Id.* Another court has noted that Adiel represents the "general rule." *Hickey v. Great Western Mortgage Corp.*, 158 F.R.D. 603, 610–11 (N.D.Ill.1994) (Conlon, J.).

At least one other court has disagreed with this rule. The Bankruptcy Court for the Eastern District of Pennsylvania expressly rejected *Adiel*. The court held that a reading of TILA requiring "detrimental reliance" was erroneous, and that the actual damages are the "undisclosed finance charge." *In re Russell*, 72 B.R. 855, 863 (Bankr.E.D.Pa.

1987). The court relied on § 1640(b), which allows a creditor to escape TILA liability by correcting an error in a disclosure statement, and amending the transaction so that the consumer will not be required to pay an amount above that which should have been disclosed. As the court reasoned, "[o]nly if the creditor faces the possibility that an understated finance charge will not be imposed on the consumer in any event is there any incentive placed upon the creditor to take the corrective action envisioned by" § 1640(b). *Id.* at 863–64.

We agree with the reasoning in the *Adiel* and *Bambilla* cases, primarily because, as Judge Leinenweber noted, "[t]here is no reason to believe that Congress adopted an idiosyncratic meaning for 'actual damages.' " *Bambilla*, at *5. We concur. In the absence of any such reason, we adhere to the traditional tort requirement of proximate causation. Therefore, we adopt the narrower definition of "actual damages," and the stricter causation requirement.

This conclusion leads us to another: a finding that the there is a genuine issue of material fact on the question of causation. There is some evidence on either side of the question. Therefore, we must deny both motions for summary judgment on the issue of causation.

## D. Union's Compliance With the FRB's Model Form

Union Nissan argues that the form of its contract complies with the format set out in the FRB's model form, FRB Model Form H–3. Plaintiffs do not address this argument in their response. Union Nissan is correct in its statement of the law, but not in its conclusion. It is true that Union Nissan's sales contract complied with the form of the FRB's model form for "Amount Financed Itemization." *See* 12 C.F.R. § 226 App. H–3. It also true that, under TILA, a creditor shall be deemed to be in compliance with TILA's disclosure provisions, "with respect to other than numerical disclosures," if the creditor uses "any appropriate model form or clause as published by the [FRB]." 15 U.S.C. § 1604(b). This is the same conclusion

reached by Judge Alesia in *Shields v. Lefta,* 888 F.Supp. 894 (N.D.Ill.1995).

The result of this compliance is to preclude Plaintiffs from alleging a TILA violation arising from the form of the sales contract, but not Plaintiff's right to seek relief for the a violation arising from the substance of the contract. That is, Union Nissan's compliance with the model form does not protect it from claims that it made misrepresentations within its contract. This result is mandated by TILA, which limits this protection to disclosures "other than numerical disclosures." Judge Alesia reached this same conclusion in *Shields,* on which Union Nissan relies. "Defendant appears to be arguing that as long as it used the model form, it could put false information on the form and be immune form any TILA claim for its compliance, which neither makes sense nor follows from TILA nor TILA caselaw." *Shields,* 888 F.Supp. at 897. We reach the same conclusion here as Judge Alesia did there. Specifically, we find that, to the extent Plaintiffs allege a violation of TILA in the form of the contract, that claim is barred by Union Nissan's compliance with the model form. This group includes any allegations of "misrepresentation of the service contract price as non-negotiable." *Shields,* 888 F.Supp. at 897. Therefore, summary judgment is granted insofar as plaintiffs seek relief for the placement of this item in the area entitled "amounts paid to others for you." To the extent the plaintiffs seek relief for the substance of the contract, including the amounts listed in the contract, such relief is not barred. This latter group includes the alleged violation of TILA as a result of Union Nissan's listing the entire amount as "paid to others" when in fact a portion of it was retained by Union Nissan.

## II. Illinois Consumer Fraud Act Claim

### A. Representation Was Not Material

■Union Nissan first argues that, under the Illinois Consumer Fraud Act ("ICFA"), only material misrepresentations are actionable, and that the alleged misrepresentations were not material. It argues that any misrepresentation "had absolutely no effect on the plaintiff's decision to purchase the service contract in question." The plaintiffs argue in response that the standard for materiality is objective, rather than subjective. Therefore, they argue, whether each plaintiff considered the misrepresentation to be material is irrelevant.

■ Plaintiffs are correct. The standard for materiality under the ICFA is an objective standard. The standard is whether it is a matter upon which a "reasonable person could be expected to rely in determining" whether to proceed with the transaction. *Heastie v. Community Bank of Greater Peoria,* 690 F.Supp. 716, 719 (N.D.Ill.1988). The conduct of the individual plaintiff is not pertinent. Under this objective standard, we cannot say that there is not a genuine question of material fact as to the materiality of the misrepresentations. Therefore, we must deny summary judgment to both parties on the issue of materiality.

### B. Proximate Cause

■ Union Nissan also argues that the ICFA's requirement of proximate cause is not satisfied here. It argues that the named plaintiff agreed to the price for the service contract before she ever saw the contract containing the misrepresentation. Thus, the argument goes, the misrepresentation did not give rise to any additional costs to the plaintiff as a result.

Under the ICFA, the harm to the plaintiff must be proximately caused by the defendant's misrepresentation. *Martin v. Heinold Commodities, Inc.,* 163 Ill.2d 33, 205 Ill.Dec. 443, 456, 643 N.E.2d 734, 747 (1994). In *Martin,* the Illinois Supreme Court held that the plaintiffs could recover damages only where "they paid a fee that they would not have paid had they known the truth" about the nature of the fee. *Id.* The court relied upon the trial court's factual finding that the plaintiffs would not have purchased the defendant's services if they had known that the fees being charged them were not all going to third persons. This is the same reasoning used by the court in *Bambilla,* when it found that the factual issue was whether the consumers "would not have entered into the service contracts if they had known that they

were incurring an upcharge." *Bambilla,* 1996 WL 284954, at \*5.

There is clearly a genuine question on this factual issue. Both sides have pointed to numerous pieces of evidence in support of their respective positions. Neither side's proof is conclusive. Therefore, we find that we may not grant summary judgment to either side on the question of causation.

### C. Defendant Did Not Intend Plaintiff to Rely on Misrepresentation

■ Defendant next argues that the plaintiff has failed to show any evidence of Union Nissan's intent to induce Plaintiff's reliance on the misrepresentation. Plaintiff makes a number of arguments in response. However, we need not get to these arguments.

■ It is true that intent to induce reliance on a misrepresentation is an element of any action under the ICFA. *See, e.g., Mackinac v. Arcadia Nat'l Life Ins. Co.,* 271 Ill. App.3d 138, 207 Ill.Dec. 781, 783–84, 648 N.E.2d 237, 239–40 (1 Dist.1995); *Lidecker v. Kendall College,* 194 Ill.App.3d 309, 141 Ill. Dec. 75, 78, 550 N.E.2d 1121, 1124 (1 Dist. 1990). The intent behind the presentation of the amount paid for the service contract seems almost self-evident: it is quite possibly an effort to disguise the additional markup. Plaintiff argues that its expert can attest to this. We do not need an expert to recognize the existence of a genuine issue of fact as to the defendant's intent. Therefore, we must deny the motion for summary judgment on these grounds.

### D. No ICFA Liability Where Contract Complies With TILA

Union Nissan argues that it cannot be liable under the ICFA because its contract complied with TILA. For this latter premise, it relies on the issues discussed in Parts I.B. and I.D., *supra,* in which Union Nissan argued that it complied with TILA because FRB Commentary sanctioned its conduct, and because it complied with the FRB's Model Form. It may be true that the ICFA recognizes compliance with TILA as a defense to an ICFA claim. *Compare* 815 ILCS 505/10b(1); *Aurora Firefighter's Credit Union v. Harvey,* 163 Ill.App.3d 915, 114 Ill.Dec.

873, 878–79, 516 N.E.2d 1028, 1033–34 (2 Dist.1987), *appeal denied,* 119 Ill.2d 553, 119 Ill.Dec. 381, 522 N.E.2d 1240 (Ill.1988); *with Grimaldi v. Webb,* 282 Ill.App.3d 174, 217 Ill.Dec. 854, 858, 668 N.E.2d 39, 43 (1 Dist. 1996), *appeal denied,* 169 Ill.2d 566, 221 Ill. Dec. 437, 675 N.E.2d 632 (1996). This point is moot, however, because we have rejected above the same TILA arguments that Union Nissan relies upon here. Therefore, we must also reject this argument.

### *Motion to Strike*

Union Nissan has filed a motion to strike two attachments to the plaintiffs' statement of facts. Specifically, it moves to strike the affidavit given by Mr. Sutton, whom plaintiffs claim is an expert, and the report of the Attorney General of New York. The plaintiffs oppose this motion. We have not relied on either attachment in reaching the above opinion, so we need not presently rule on this motion. We will deny this motion without prejudice to the defendant's right to raise these issues in the future.

### CONCLUSION

For the reasons discussed above, the defendant's motion for summary judgment is granted in part and denied in part, the plaintiffs' motion for summary judgment is denied, and the motion to strike is denied without prejudice.