803 N.E.2d 87 (2003)
345 Ill. App.3d 449
280 Ill.Dec. 857
Mary CORCORAN, Special Administrator of the Estate of Michael Corcoran, Deceased, Plaintiff/Respondent-Appellant,
v.
NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPRATION, Individually and d/b/a Metra, a corporation, and Union Pacific Railroad Company, a corporation, Defendants (Joseph Dowd, Petitioner-Appellee).
No. 1-02-1516.
Appellate Court of Illinois, First District, First Division.
December 22, 2003.
Rehearing Denied December 3, 2003.
*88 Christopher T. Hurley & Associates, Chicago (Christopher T. Hurley and Mark R. McKenna, of counsel), for Appellant.
Michael W. Rathsack, Chicago, for Appellee.
Justice McNULTY delivered the opinion of the court:
After her husband died in a train accident, Mary Corcoran received a settlement offer from the railroads involved in the accident. She talked to Joseph Dowd, a lawyer, who referred her to Corboy & Demetrio (C & D). She signed a contingent fee contract with C & D. The contract included a referral fee for Dowd. C & D eventually advised Mary to accept the offer *89 she received from the railroads. When Mary settled C & D waived its fee, but Dowd demanded his referral fee. The trial court awarded Dowd the fee. Mary now appeals. Because we find no abuse of discretion, we affirm.
On October 11, 1998, a Metra train struck and killed Michael Corcoran while he was working for Union Pacific Railroad on tracks in Chicago. Metra and Union Pacific offered Michael's widow, Mary, some money not to sue, and she negotiated with the railroads on her own. Mary eventually elicited an offer of $1,400,000 to settle the case.
In May 1999 a friend introduced Mary to Dowd. The friend had already told Dowd about the accident and Mary's negotiations. Dowd told Mary she needed a lawyer. She said she wanted to hire C & D because her father knew Corboy from high school, Dowd offered to take Mary to C & D's office. At the office, on May 19,1999, Mary signed a contract for C & D to handle the case. The contract provides:
"I agree to pay CORBOY & DEMTRIO as compensation for its services and assign to it twenty-five percent of any sum recovered from settlement or judgment.
* * *
I fully understand, agree and consent to the fact that Joseph P. Dowd, the referring lawyer, will receive 40% of the attorneys' fees and that Joseph P. Dowd has agreed to assume the same legal responsibility for the performance of the legal services as CORBOY & DEMTRIO assumes on my behalf."
David Wise of C & D filed a wrongful death lawsuit against the railroads in August 1999. Wise moved for appointment of Mary as special administrator of Michael's estate, after obtaining consents from both of Michael and Mary's children. Attorneys from C & D sent notices to the railroads for depositions of several witnesses. Wise filed an answer to the railroads' affirmative defenses and a response to the railroads' interrogatories and requests for production. Attorneys from C & D met with Mary on several occasions to discuss the status of the case.
No depositions ever took place. In April 2001 Wise recommended settling the case for the $1,400,000 offer. Mary accepted the advice. The court approved the settlement in December 2001. Because C & D did not improve on the settlement offer Mary obtained without its help, C & D waived its fee.
Dowd petitioned for an award of 40% of C & D's contractual fee of 25% of the settlement. Mary answered that the fee was unreasonable because Dowd had no contract with Mary and did no work on the case.
The trial court found that Dowd met the requirements of the Rules of Professional Conduct for charging a referral fee. In the written order the court added:
"When the case settled, Plaintiff became obligated to pay 25% of the settlement in fees with 40% of that 25% going to Dowd. The fact that Corboy & Demetrio declined to collect the owed fee does not lead to the conclusion that Dowd may not collect a fee.
The only basis for denying the $140,000 fee to Dowd would be if Corboy & Demetrio's 25% contingency fee [were] unreasonable. * * *
While Corboy & Demetrio chose to waive its fee because it was not able to obtain a higher settlement for Plaintiff th[a]n what was originally offered, the 25% contingency fee was not unreasonable. The court computer record attached to the Petition shows that Corboy & Demetrio did a significant amount of work in this case in the two years it *90 was pending. The firm was simply unable to achieve a higher settlement. Plaintiff retained Corboy & Demetrio and agreed to pay a contingency fee on any settlement or judgment knowing that she already had a significant offer for settlement. It was Plaintiff's decision to file a lawsuit instead."
We will not reverse an award of attorney fees unless the trial court abused its discretion. Tobias v. King, 84 Ill. App.3d 998, 1002, 40 Ill.Dec. 400, 406 N.E.2d 101 (1980). As with any appeal, if the case presents a pure issue of law, we determine the issue without deference to the trial court's judgment. In re Lawrence M., 172 Ill.2d 523, 526, 219 Ill.Dec. 32, 670 N.E.2d 710 (1996).
Mary argues on appeal primarily that Dowd did not perform sufficient legal work to warrant an award of $140,000 in fees. When lawyers working on a case split a fee, the division usually should be proportionate to the services each attorney performed and responsibilities each attorney assumed. 134 Ill.2d R. 1.5(g). But the rules make an explicit exception for referral fees. 134 Ill.2d R. 1.5(g). Because Dowd sought a referral fee he did not need to prove that his legal work merited the fee. See Boer v. First Options of Chicago, Inc., 72 F.3d 1294, 1302-04 (7th Cir.1995).
According to Rule 1.5 of the Rules of Professional Conduct:
"(g) A division of fees shall be made in proportion to the services performed and responsibility assumed by each lawyer, except where the primary service performed by one lawyer is the referral of the client to another lawyer and
(1) the receiving lawyer discloses that the referring lawyer has received or will receive economic benefit from the referral and the extent and basis of such economic benefit, and
(2) the referring lawyer agrees to assume the same legal responsibility for the performance of the services in question as would a partner of the receiving lawyer.
(h) The total fee of the lawyers shall be reasonable." 134 Ill.2d Rs. 1.5(g), (h).
C & D disclosed in writing the fee apportioned to Dowd for the referral. The contract asserted that Dowd agreed to assume the same responsibility for the case as a partner in C & D would assume. The writing met the requirement of Rule 1.5(g) for disclosure of the referral fee. See Elane v. St. Bernard Hospital, 284 Ill. App.3d 865, 873, 220 Ill.Dec. 3, 672 N.E.2d 820 (1996).
Courts have a duty to guard against the collection of excessive fees in all cases, including those involving referral fees. XL Disposal Corp. v. John Sexton Contractors Co., 168 Ill.2d 355, 360, 213 Ill.Dec. 665, 659 N.E.2d 1312 (1995). Here a contract sets forth the total compensation for attorneys and the portion of the total designated as the referral fee. Usually a contract between an attorney and his client will control compensation for the attorney. Hapaniewski v. Rustin, 179 Ill. App.3d 951, 954, 128 Ill.Dec. 810, 535 N.E.2d 24 (1989), Courts will enforce contingent fee contracts unless they are unreasonable. In re Estate of Sass, 246 Ill. App.3d 610, 614, 186 Ill.Dec. 512, 616 N.E.2d 702 (1993).
Mary cites In re Teichner, 104 Ill.2d 150, 83 Ill.Dec. 552, 470 N.E.2d 972 (1984), and In re Gerard, 132 Ill.2d 507, 139 Ill. Dec. 495, 548 N.E.2d 1051 (1989), to support her argument that the contingent fee contract here is unreasonable. In Gerard the client misplaced certificates of deposit. The attorney merely reregistered the certificates *91 with the banks that held the accounts. Because no one disputed the client's right to the funds, the work concluded with neither a judgment nor a settlement. In Teichner, the client received insurance proceeds from routine payment, where the insurer never questioned the client's right to payment. Our supreme court held that the predecessor of Rule 1.5(c) of the Rules of Professional Conduct precluded contingent fees in those cases because the representation concluded with neither a judgment nor a settlement. 134 Ill.2d R. 1.5(c); Gerard, 132 Ill.2d at 522, 139 Ill.Dec. 495, 548 N.E.2d 1051; Teichner, 104 Ill.2d at 160, 83 Ill.Dec. 552, 470 N.E.2d 972.
Here the railroads denied liability in their response to the complaint, claiming that Michael's negligence caused his injuries. The parties resolved the complaint through a settlement. In this case, unlike Teichner and Gerard, the rules permit C & D to charge a reasonable contingent fee.
Mary contends that we should find all contingent fee contracts unreasonable unless the attorney obtains some improvement over any settlement offered without the attorney's intervention. Of course the attorney and the client have the right to enter into a contingent fee contract with such a provision. See Mohr v. Dix Mutual County Fire Insurance Co., 143 Ill. App.3d 989, 1000, 97 Ill.Dec. 831, 493 N.E.2d 638 (1986). But nothing in the rules compels such contracts or forbids contracts like the one Mary signed, in which she agreed to pay her attorneys 25% of the total recovered from the railroads, with no mention of the amounts the railroads had already offered her.
Mary also argues that the attorneys' work does not merit the fee. The record gives scant indication of the work C & D performed, as Mary's evidence and argument focused on Dowd's failure to perform substantial work. The judge who presided over the case and observed the work of the attorneys found the contingent fee contract not unreasonable, and therefore enforceable. The trial court correctly focused on C & D's work, and noted that C & D had filed papers needed to protect Mary's right to litigate her claim. We cannot say the trial court abused its discretion by finding the work sufficient to make the contingent fee contract enforceable.
Finally, Mary seeks rescission of the contingent fee contract, claiming that it rested on a mutual mistake regarding material facts. Both Mary and her attorneys believed at the time of contracting that Mary would win more than $1,400,000 if she litigated the case. Attorneys at C & D later realized Mary faced a substantial risk of recovering at trial far less than the settlement offer.
To invalidate an agreement, a mistake must relate to a past or present fact material to the contract. Cameron v. Bogusz, 305 Ill.App.3d 267, 272, 238 Ill. Dec. 533, 711 N.E.2d 1194 (1999). Predictions usually do not qualify as such present facts (see Lidecker v. Kendall College, 194 Ill.App.3d 309, 314-16, 141 Ill.Dec. 75, 550 N.E.2d 1121 (1990)), and mistaken predictions will not invalidate a contract. Since parties generally enter into contracts expecting to benefit, the rule Mary espouses would invalidate many contracts in which either party fails to reap the expected benefits. Allowance of rescission here, as in Cameron, would leave parties to most contracts uncertain as to whether they have a valid contract throughout the period of performance, as subsequent events might make the contract disadvantageous for one party who expected a benefit. Public policy demands greater certainty concerning contracts. Cameron, 305 Ill. *92 App.3d at 274, 238 Ill.Dec. 533, 711 N.E.2d 1194. The mistaken prediction here provides no grounds for invalidating the contingent fee contract.
C & D had a valid contingent fee contract with Mary for one-fourth of any settlement reached with the railroads in this wrongful death case. The contract included a provision for Dowd to take 40% of C & D's fee. When Mary settled her case for $1,400,000, the amount the railroads offered without any attorney's intervention, Dowd had a contractual right to payment of 40% of C & D's 25% fee, for a referral fee of $140,000. The trial court did not abuse its discretion when it awarded Dowd that fee. The judgment of the trial court is affirmed.
Affirmed.
O'MALLEY, P.J., and McBRIDE, J., concur.